# **EXHIBIT D**

*Hiatt v. Brigham Young Univ.*, 2021 U.S. Dist. LEXIS 3269, Case No. 1:20-cv-00100-TS, Opinion and Order (D. Utah Jan. 7, 2021)

No *Shepard's* Signal™
As of: January 21, 2021 7:44 PM Z

# *Hiatt v. Brigham Young Univ.*

United States District Court for the District of Utah, Central Division

January 7, 2021, Decided; January 7, 2021, Filed

Case No. 1:20-CV-00100-TS

**Reporter**
2021 U.S. Dist. LEXIS 3269 *; __ F. Supp. 3d __; 2021 WL 66298

CHASE HIATT, Plaintiff, v. BRIGHAM YOUNG UNIVERSITY, Defendant.

**Opinion by:** TED STEWART

## Core Terms

in-person, tuition, unjust enrichment, impracticability, argues, Declaration, documents, breach of contract claim, implied-in-fact, on-campus, semester, alleges, changes, parties, financial responsibility, breach of contract, express contract, contracts, mandatory, catalog, plaintiff's claim, disclaimer, website, campus

**Counsel:** [*1] For Chase Hiatt, an individual on behalf of himself and all others similarly situated, Plaintiff: Jeremy B. Francis, LEAD ATTORNEY, PRO HAC VICE, THE SULTZER LAW GROUP P.C., NEW YORK, NY; Michael Jay Watton, LEAD ATTORNEY, WATTON LAW GROUP, 301 W WISCONSIN AVE; Brett R. Cohen, Michael A. Tompkins, PRO HAC VICE, LEEDS BROWN LAW PC, CARLE PLACE, NY.

For Brigham Young University, a Utah corporation, Defendant: Christopher A. Bauer, LEAD ATTORNEY, BRIGHAM YOUNG UNIVERSITY, OFFICE OF THE GENERAL COUNSEL, PROVO, UT; David M. Andersen, LEAD ATTORNEY, BRIGHAM YOUNG UNIVERSTIY, OFFICE OF THE GENERAL COUNSEL, PROVO, UT; James S. Jardine, Samuel C. Straight, LEAD ATTORNEYS, RAY QUINNEY & NEBEKER PC, SALT LAKE CITY, UT.

**Judges:** TED STEWART, United States District Judge.

## Opinion

MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

This matter is before the Court on Defendant Brigham Young University's ("BYU") motion to dismiss ("Motion"), which asks the Court to dismiss this matter for failure to state a claim. For the following reasons, the Court denies the Motion.

I. BACKGROUND

Coronavirus Disease 2019 ("COVID-19") is a deadly, novel coronavirus that was discovered [*2] in late 2019 and spread very quickly in the first months of 2020. COVID-19 caused a global pandemic that has affected all facets of regular life. As one example, in and around March 2020 many universities in the United States, including BYU, adjusted the ways they conducted classes and other campus activities to prevent the spread of COVID-19.[1] This included moving most or all in-person classes to an online format and closing or cancelling many on-campus facilities and services.[2] These changes set the stage for Plaintiff's claims.

Plaintiff was an undergraduate student at BYU during the relevant semesters,[3] and his Complaint presents a proposed class action on behalf of himself and BYU

---

[1] *See* Docket No. 2 ¶¶ 21-24.

[2] *Id.*

[3] *Id.* ¶ 10.

students who paid tuition for any semester or term affected by COVID-19.[4] Undergraduate students at BYU paid between $2,895 and $5,970 in tuition,[5] and graduate students paid between $430 to $860 per credit hour in tuition for the Winter 2020 semester.[6] The students also paid mandatory fees in addition to their tuition.[7] According to the Complaint, BYU "agreed to . . . provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory fees they paid pertained" **[*3]** in return.[8] Plaintiff supports this alleged agreement by referencing BYU's website, promotional materials, and acceptance letters that market and promote the in-person education and campus services BYU provides.[9] Then, during the Winter 2020 semester, BYU unexpectedly changed its in-person classes to online classes and stopped providing many on-campus services to prevent the spread of COVID-19.[10] Despite these changes, BYU has not refunded any part of the tuition or mandatory fees it assessed for the Winter semester or any other semester affected by COVID-19.[11] Plaintiff brought this Complaint against BYU for breach of contract and, in the alternative, unjust enrichment because of the changes BYU made due to COVID-19.[12] Now, with this Motion, BYU challenges the entire Complaint for failure to state a claim.[13]

## II. STANDARD OF REVIEW

A court may dismiss a complaint when it fails to state a claim upon which relief can be granted.[14] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[15] Legal conclusions alone are not sufficient.[16] When reviewing a motion **[*4]** to dismiss, a court must assume all the facts alleged in the complaint are true.[17] The court must also limit its review to the four corners of the Complaint and documents incorporated by reference in the Complaint.[18]

## III. ANALYSIS

BYU seeks dismissal on Plaintiff's breach of contract and unjust enrichment claims. Both of the claims are governed under Utah law, as detailed below.

### A. BREACH OF CONTRACT

In its Motion, BYU argues that Plaintiff's breach of contract claim should be dismissed for two reasons. First, BYU argues there is no contract term requiring BYU to provide in-person education and campus services, so BYU did not breach the contract. Second, BYU argues that even if the contract does contain a term requiring BYU to provide in-person education and services, BYU is excused because it would be impracticable to provide in-person education and services during a global pandemic. Each of these arguments will be addressed individually.

#### 1. Prima Facie Case

In Utah, the necessary elements of a breach of contract claim are "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[19] While BYU admits, for the purposes of its **[*5]** Motion, that Plaintiff sufficiently alleges the existence of a contract, the parties do not agree about the terms of the contract. BYU argues that

---

[4] *Id.* ¶ 3.

[5] *Id.* ¶ 2.

[6] *Id.* ¶ 19.

[7] *Id.* ¶ 2.

[8] *Id.* ¶ 50.

[9] *Id.* ¶¶ 52-55.

[10] *Id.* ¶¶ 3-4.

[11] See generally *id.*

[12] *Id.* ¶¶ 10, 38, 48-70.

[13] Docket No. 21, at 1.

[14] Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991).

[15] Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation and internal quotation marks omitted).

[16] *Id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

[17] Hall, 935 F.2d at 1109.

[18] Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009); Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).

[19] Am. W. Bank Members, L.C. v. State, 2014 UT 49 ¶ 15, 342 P.3d 224.

it did not agree to provide in-person instruction or on-campus services and therefore did not breach the agreement. But Plaintiff argues that BYU's website, promotional materials, and his acceptance letter establish a contract in which BYU agreed to provide in-person education and on-campus services, and BYU did breach this agreement. Thus, the relevant question is whether Plaintiff, in the Complaint, sufficiently alleges a contract in which BYU agreed to provide in-person instruction and on-campus services.

As an initial matter, the Court will address BYU's argument that there is no contract requiring BYU to provide in-person education and services. Importantly, "a court should consider no evidence beyond the pleadings on a *Rule 12(b)(6)* motion to dismiss" except for "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[20] BYU supports its argument with two documents: the Financial Responsibility Declaration and BYU's catalog. Plaintiff does not explicitly [*6] reference either of these documents in the Complaint, but Plaintiff does broadly refer to the BYU website. Though these documents are not listed by name in the Complaint, they can be found on the BYU website. Thus, it is not clear whether the Financial Responsibility Declaration and the catalog are referred to in the Complaint or central to Plaintiff's claim, but Plaintiff does not dispute their authenticity. Plaintiff also does not argue that these documents should not be considered. In an attempt to give BYU every allowance supported by law, the Court will consider these documents.

The two documents BYU submitted do not support dismissal. First, the Financial Responsibility Declaration states "I understand that when I register for any class or receive any service from BYU I accept full responsibility to pay all tuition, fees, and other associated costs assessed as a result of my registration and/or receipt of services."[21] While this declaration does not explicitly require BYU to provide in-person learning, it does not conflict with Plaintiff's claim. Further, BYU's argument that its obligation to Plaintiff is complete when he registers for classes or receives any service defies logic. [*7] Under this interpretation, BYU would be permitted to require full tuition payment for the mere privilege of registration without providing any type of instruction. Such a reading of the Financial Responsibility Declaration is untenable and inconsistent with the relationship between a university and its students. While BYU is correct that nothing in this declaration requires in-person instruction, it surely suggests that BYU owes more to its students than simply allowing them to register or receive some modicum of services.

Next, BYU points to a disclaimer in its catalog, which states

> The university makes every reasonable effort to provide accurate information in the contents of this catalog but reserves the right to make changes at any time without prior notice. The university reserves the right to change or discontinue graduation requirements, department majors, individual courses, instructors, and all other aspects of university operations. In the event the university determines to make changes in curriculum, it will post these changes as soon as practical within this online catalog. It is recommended that students regularly check this catalog for possible changes.[22]

In the employment [*8] context, courts have held that a clear and conspicuous waiver may prevent the creation of an implied-in-fact contract.[23] "The prominence of the text, the placement of the disclaimer, and the language of the disclaimer are all relevant factors in determining whether a disclaimer is clear and conspicuous."[24] Here, there is insufficient information for the Court to determine whether this disclaimer bars Plaintiff's claim as a matter of law.

BYU also argues that the Court should not interfere with BYU's academic decisions.[25] BYU cites to several cases in which courts have declined to interfere in academic decisions such as academic dismissals.[26]

---

[20] *Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007)* (quoting *Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002)*).

[21] Docket No. 21-1, at 5.

[22] Docket No. 21, at 10.

[23] *Hodgson v. Bunzl Utah, Inc., 844 P.2d 331, 334 (Utah 1992)*.

[24] *Tomlinson v. NCR Corp., 2014 UT 55 ¶ 24, 345 P.3d 523*.

[25] Docket No. 21, at 10-11.

[26] See *Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 90, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978)* (declining to interfere in the decision to dismiss a student); *Gaspar v. Bruton, 513 F.2d 843, 850 (10th Cir. 1975)* (declining to interfere in the decision to dismiss a student); *Assenov v.*

However, Plaintiff is not asking the Court to interfere in BYU's academic or pedagogical choices by requiring BYU to provide in-person education or change its methods of education. Rather, Plaintiff is asking for a refund of tuition and/or mandatory fees for the breach of contract alleged. The requested relief does not require the Court to ask BYU to change its operations or otherwise interfere in BYU's academic decisions, so this argument does not support granting the Motion.

Next, the Court will address whether Plaintiff sufficiently alleges a contract **[*9]** in which BYU agreed to provide in-person instruction and on-campus services. Under Utah law, a contract can consist of an express contract or an implied-in-fact contract.[27] Contracts implied in fact are "contracts established by conduct" and, like express contracts, "require a meeting of the minds."[28] Utah courts have not specifically addressed whether students can use a university's publications as evidence of an implied-in-fact contract, but they "have stated that an employee may use an employer's written policies, bulletins, or handbooks as evidence of an implied-in-fact contract."[29] The principle exists to "give effect to the intent of the parties," which would apply to other contracts, including student-university contracts.[30] Utah law also does not foreclose the enforceability of an implied-in-fact contract when there is also an express contract between the parties.[31]

Though BYU argues that Plaintiff's Complaint is lacking, Plaintiff sufficiently alleges facts to support the breach of contract claim. First, Plaintiff supports the existence of a contract with reference to BYU's website, promotional and marketing materials, and Plaintiff's acceptance letter. **[*10]** According to Plaintiff, BYU "promoted its in-person educational services as being valuable to students' educational experiences," and impliedly promised these in-person educational experiences, opportunities, and services in its acceptance letter to Plaintiff. While Plaintiff could certainly do more to shore up these allegations, these are facts that could support an enforceable implied-in-fact contract under Utah law with a term requiring BYU to provide in-person education and services. And an express agreement would not necessarily preclude the enforceability of the alleged implied-in-fact contract. These facts support the first element for the breach of contract claim.

The Complaint also alleges facts supporting the other three elements for a breach of contract claim. According to the Complaint, BYU announced that it would cancel in-person classes and begin offering all classes online on March 13, 2020. This is a breach of the alleged agreement in which BYU agreed to provide in-person education and services. Next, the Complaint states that Plaintiff performed his obligation by paying the tuition and fees. Finally, the Complaint alleges that Plaintiff has damages from the breach of **[*11]** contract because he did not receive the valuable education and other services for which he paid. Therefore, Plaintiff has stated sufficient facts to satisfy the liberal requirements to plead a claim for breach of contract under *Rule 8(a)*.

2. Impracticability

Next, BYU argues the Court should grant its Motion because, even if it did breach the contract, BYU is excused from this alleged obligation because it is impracticable for BYU to provide in-person education and services during the COVID-19 pandemic. In Utah, impracticability is a defense against a breach of contract claim.[32] "Dismissal of a claim under *Rule 12(b)(6)* on the basis of an affirmative defense . . . is proper where that defense is clear from the face of the Complaint."[33]

---

*Univ. of Utah, 553 F. Supp. 2d 1319, 1328 (D. Utah 2008)* (declining to interfere in the decision to dismiss a student); *Axson-Flynn v. Johnson, 356 F.3d 1277, 1292 n.14 (10th Cir. 2004)* (citing cases in which the Supreme Court has declined to interfere in academic dismissals, expulsions, discipline, and uniform requirements).

[27] See *Sachs v. Lesser, 2007 UT App 169 ¶ 16, 163 P.3d 662* (analyzing breach of contract under an express contract and an implied in fact contract theory), *rev'd on other grounds by Sachs v. Lesser, 2008 UT 87, 207 P.3d 1215*; *Berube v. Fashion Ctr., Ltd., 771 P.2d 1033, 1044 (Utah 1989)* ("An employee may demonstrate that his at-will termination breached an express or implied agreement with the employer to terminate him for cause alone.").

[28] *Jones v. Mackey Price Thompson & Ostler, 2015 UT 60 ¶ 44, 355 P.3d 1000*.

[29] *Hodgson, 844 P.2d at 333*.

[30] *Berube, 771 P.2d at 1044*.

[31] See *Wood v. Utah Farm Bureau Ins., 2001 UT App 35 ¶ 14, 19 P.3d 392*.

[32] See *W. Props. v. S. Utah Aviation, Inc., 776 P.2d 656, 658 (Utah Ct. App. 1989)*.

[33] *VanLandingham v. Grand Junction Reg'l Airport Auth., 46 F. Supp. 3d 1119, 1124 (D. Colo. 2014)*; see also *Bullington v.*

Thus, the relevant question is whether BYU's defense of impracticability is clear from the face of Plaintiff's Complaint.

"The doctrine of impracticability excuses a party's performance 'if an unforeseen event occurs after formation of the contract and without fault of the obligated party, which event makes performance of the obligation impossible or highly impracticable.'"[34] However, "a party may not defend on grounds of impracticability when that party takes on the [*12] risk that a supervening event will occur and render performance impracticable or impossible."[35] BYU asks the Court to take judicial notice of governmental orders related to COVID-19 and argues that the COVID-19 pandemic and the related governmental orders constitute the "unforeseen event" that made its performance impracticable. And BYU argues that Plaintiff, not BYU, bore the risk of a supervening event because of the language of the Financial Responsibility Declaration in which Plaintiff agreed to "pay all tuition upon registration."[36]

Even if this Court took judicial notice of the governmental orders, the Court could not grant the Motion on the impracticability defense. It is essential to know which party bears the risk of the agreement before determining whether impracticability is a valid defense. BYU argues that "the question [of who bears risk] is unequivocally answered in this case by the financial responsibility declaration."[37] But the language in the declaration does not "unequivocally" answer which party bears the risk. It simply states that Plaintiff agreed to pay tuition and fees at the time of registration or receipt of services—there is no mention of risk. Moreover, the [*13] other facts Plaintiff references in the Complaint do not provide a clear answer to whether Plaintiff or BYU would bear the risk either. Therefore, BYU's defense is not clear on the face of the Complaint. Further, even if it was impossible for BYU to provide in-person education, BYU could still be required to provide restitution.[38] For these reasons, the Court will not dismiss the breach of contract claim.

B. UNJUST ENRICHMENT

BYU also argues that Plaintiff's unjust enrichment claim should be dismissed because the contract between Plaintiff and BYU precludes the unjust enrichment claim. Rule 8 explicitly states that complaints can include claims for "relief in the alternative,"[39] but "where an express contract covering the subject matter of the litigation exists, recovery for unjust enrichment is not available."[40]

While the Court agrees that Plaintiff cannot ultimately succeed on both the breach of contract claim and the unjust enrichment claim, Plaintiff sufficiently alleges these two claims in the alternative, and both claims can survive the Motion. Though some decisions in Utah courts and in this district have granted motions to dismiss unjust enrichment claims under Utah law because of the [*14] existence of a contract, those cases are distinguishable from this case. Specifically, those cases all had obvious, express, written contracts between the parties and no dispute about the enforceability of those contracts.[41] But here, as mentioned previously, Plaintiff's Complaint does not necessarily allege an express contract. One of the questions presented by the Complaint is whether there is an enforceable contract between the parties. The facts and evidence may establish an express contract, an implied-in-fact contract, or no enforceable contract between the parties. Thus, the unjust enrichment claim is not precluded at this stage.

---

United Air Lines, Inc., 186 F.3d 1301, 1310 n.3 (10th Cir. 1999) (overruled on other grounds).

[34] Cent. Utah Water Conservancy Dist. v. Upper E. Union Irrigation Co., 2013 UT 67 ¶ 28, 321 P.3d 1113 (quoting W. Props., 776 P.2d at 658).

[35] Id.

[36] Docket No. 29, at 12.

[37] Id.

[38] *Restatement (Second) of Contracts § 377* (Am. Law Inst. 1981).

[39] Fed. R. Civ. P. 8(a)(3).

[40] U.S. Fid. v. U.S. Sports Specialty, 2012 UT 3 ¶ 13, 270 P.3d 464 (quoting Selvig v. Blockbuster Enters., LC, 2011 UT 39 ¶ 30, 266 P.3d 691).

[41] Id. at ¶ 14 (dismissing an unjust enrichment claim when there is a written insurance policy); Wilcox v. Career Step, L.L.C., No. 2:08-CV-998-CW, 2010 U.S. Dist. LEXIS 14457, 2010 WL 624863, at *6 (D. Utah Feb. 19, 2010) (unpublished) (dismissing an unjust enrichment claim where the complaint alleged an express, written contract for the work plaintiff did); Anapoell v. Am. Express Bus. Fin. Corp., No. 2:07-CV-198-TC, 2007 U.S. Dist. LEXIS 88182, 2007 WL 4270548, at *5—*6 (D. Utah Nov. 30, 2007) (unpublished) (dismissing an unjust enrichment claim when there was a written lease agreement).

In addition, the Complaint sufficiently alleges facts supporting all of the necessary elements of an unjust enrichment claim. In Utah, the elements of an unjust enrichment claim are "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[42] Plaintiff **[*15]** alleges that he conferred a benefit on BYU when he paid tuition and mandatory fees for the relevant semesters and terms. BYU knew about the benefit and allowed Plaintiff to register for classes and receive campus services. BYU then retained the full tuition and mandatory fees after BYU cancelled in-person classes and campus services, which is allegedly inequitable because Plaintiff did not receive the valuable in-person education or the services and facilities for which he paid. Therefore, the Court will not dismiss the unjust enrichment claim.

IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss for Failure to State a Claim (Docket No. 21) is DENIED.

DATED January 7, 2021.

BY THE COURT:

/s/ Ted Stewart

TED STEWART

United States District Judge

**End of Document**

---

[42] *Rawlings v. Rawlings, 2010 UT 52 ¶ 29, 240 P.3d 754* (internal citation and quotation marks omitted).

Salvatore Davi