# **EXHIBIT E**

*Rhodes v. Embry-Riddle Aeronautical Univ.*, 2021 U.S. Dist. LEXIS 8047 (M.D. Fla. Jan. 14, 2021)

No *Shepard's* Signal™
As of: January 20, 2021 6:42 PM Z

# *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*

United States District Court for the Middle District of Florida, Orlando Division

January 14, 2021, Decided; January 14, 2021, Filed

Case No: 6:20-cv-927-Orl-40EJK

**Reporter**
2021 U.S. Dist. LEXIS 8047 *

CHRISTOPHER RHODES, Plaintiff, v. EMBRY-RIDDLE AERONAUTICAL UNIVERSITY, INC., Defendant.

## Core Terms

amended complaint, allegations, courts, unjust enrichment, campus, in-person, tuition, on-campus, contractual obligation, online, substantial benefit, motion to dismiss, contract claim, pandemic, promise, spring

**Counsel: [*1]** For Christopher Rhodes, Individually and on Behalf of All Others Similarly Situated, Plaintiff: E. Michelle Drake, LEAD ATTORNEY, Berger & Montague, PC, Minneapolis, MN, USA; Patrick F Madden, LEAD ATTORNEY, Berger Montague PC, Philadelphia, PA, USA; Rebecca Timmons, Levin Papantonio, Pensacola, FL, USA; Matthew D. Schultz, Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A, Pensacola, FL, USA.

For Embry-Riddle Aeronautical University, Inc., Defendant: Daniel A. Cohen, LEAD ATTORNEY, PRO HAC VICE, Nelson Mullins Riley & Scarborough LLP, Atlanta, GA, USA; Paul M. Renner, LEAD ATTORNEY, Nelson Mullins Riley & Scarborough LLP, Orlando, FL, USA; Shaina Stahl, LEAD ATTORNEY, Nelson Mullins Broad and Cassel LLP, Orlando, FL, USA.

**Judges:** PAUL G. BYRON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** PAUL G. BYRON

## Opinion

### ORDER

This cause comes before the Court on Defendant's Dispositive Motion to Dismiss the Amended Complaint (Doc. 37 (the "**Motion**")). Plaintiff responded in opposition. (Doc. 41). Each party has also submitted notices of supplemental authorities. (*See* Docs. 45-47). Upon consideration, the Motion is due to be denied.

### I. BACKGROUND

This breach of contract action arises out of Defendant Embry-Riddle University's **[*2]** response to Coronavirus Disease 2019 ("**COVID-19**"). During the spring 2020 academic term, Plaintiff was enrolled as a full-time undergraduate student and registered for live classes at Embry-Riddle's Daytona Beach campus. (Doc 32, p. 14).[1]

The COVID-19 pandemic first reached the United States in January 2020. Within two months, infection rates had spiked to alarming numbers. On March 13, the president officially declared that COVID-19 had become a national

---

[1] Embry-Riddle students enroll in one of four campuses—Daytona Beach, Florida; Prescott, Arizona; Asia; or Worldwide & Online. (Doc. 32, ¶ 23). Defendant advertises that the Worldwide & Online "campus" allows students to "earn an Embry-Riddle degree from the convenience of [their] home[s] using our state-of-the-art Online Learning Technology" (*Id.*).

emergency.² In response, many educational institutions, including Defendant, began adopting policies to reduce transmissions of the virus, curb infection rates, and "flatten the curve."

Throughout the month of March, Defendant made several policy changes in response to the pandemic. On March 13—the same day as the national emergency declaration—Defendant announced that most classes would transition from in-person to online instruction. (*Id.* at p. 15). The following week, Defendant announced that all classes would be taught remotely and all large gatherings would be canceled until at least the end of the spring 2020 semester. (*Id.* at p. 16). A week later, all community gathering spaces and laboratories were closed, student access cards were deactivated, and **[*3]** dining halls became limited to take-out. (*Id.*). Two days later, Defendant closed student residence halls. (*Id.*). These changes remained in effect through the end of the summer 2020 academic term.

According to Plaintiff, he contracted with Defendant to receive live, on-campus instruction and access to campus facilities during the spring 2020 academic term in exchange for his payments of tuition and related fees. (*Id.* at p. 1). Based on this contract, Plaintiff alleges that Defendant's decision to close its campus and move classes online was a breach of contract. (*Id.* at p. 23 ("**Count I**")). In the alternative, Plaintiff alleges that Defendant would be unjustly enriched if it retained the full value of his tuition and fees. (*Id.* at p. 26 ("**Count II**")). Plaintiff's Amended Complaint seeks relief on behalf of himself and a class of similarly situated Embry-Riddle students. (*Id.* at p. 1). Defendant now moves to dismiss. (Doc. 37).

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(1). Thus, in order to survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that **[*4]** is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts are generally limited to the four corners of a complaint, *see* St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002), but they may also consider attached exhibits and documents referred to in the complaint that are central to the claim, *see* Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009).

Though a complaint need not contain detailed factual allegations, mere legal conclusions or recitation of the elements of a claim are not enough. Twombly, 550 U.S. at 555. Moreover, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam).

In sum, courts must (1) ignore conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept well-pled factual allegations as true; and (3) view well-pled allegations **[*5]** in the light most favorable to the plaintiff. Iqbal, 556 U.S. at 667.

## III. DISCUSSION

The facts of this case—like the coronavirus itself—are novel. The underlying law is not. Indeed, the Motion can be decided by resort to Florida's well-established legal principles.³ The Court addresses Defendant's arguments in turn.

### A. The Academic Deference Doctrine does not give Universities Unbounded Discretion to Avoid Contractual Obligations

Defendant begins by arguing that "[c]onsiderations of profound importance counsel restrained judicial review of the substance of academic decisions." Regents of

---

² Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020).

³ As a diversity action, Florida law applies. Pendergast v. Sprint. Nextel Corp., 592 F.3d 1119, 1132 (11th Cir. 2010).

*Univ. of Mich. v. Ewing, 474 U.S. 214, 225, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985)*. Courts have a "responsibility to safeguard [educational institutions'] academic freedom." *Id. at 226*. Commensurate with this freedom is an institution's autonomy to determine what may be taught and "how it shall be taught." *Sweezy v. New Hampshire, 354 U.S. 234, 263, 77 S. Ct. 1203, 1 L. Ed. 2d 1311 (1957)* (Frankfurter, J., concurring). From there, Defendant argues that Courts may not "second-guess a university's decision making in the realm of academic instruction." (Doc. 37, p. 7). Thus, Defendant asserts a right to "unilaterally" modify the format of classes, regardless of its existing contractual obligations. (*Id.*). The Court disagrees.

At the outset, the Court is not convinced that the academic deference doctrine even applies **[*6]** to the present case. The case law consistently frames the issue as one of institutional competence—a university is best equipped to manage its academic affairs, so it must be afforded "broad discretion when it exercise[s] its *academic* judgment." *Jallali v. Nova. Se. Univ., Inc., 992 So. 2d 338, 344 (Fla. 4th DCA 2008)* (emphasis added). Accordingly, courts decline to entertain breach of contract actions where "[t]he claim requires the factfinder to enter the classroom and determine whether or not the judgments and conduct of professional educators were deficient." *Atkin v. Hill, Darlington & Grimm, 44 Misc. 2d 863, 254 N.Y.S.2d 867, 873 (N.Y. App. Div. 1982)*.

In contrast, however, courts *have* supported breach of contract actions where universities fail to perform specific contractual obligations, provided that such claims do not require judicial review of an academic evaluation.[4] As explained by the Seventh Circuit:

In these cases, the essence of the plaintiff's complaint would not be that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all. Ruling on this issue would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment of whether the institution made a good faith effort to perform on its promise.

*Ross, 957 F.2d at 417*.

Consider the following illustration: a university decides to stop offering *astronomy* classes in favor of *astrology* classes. Such curriculum-based decisions would fall squarely within the ambit of academic freedom, so courts should defer to the university's independent assessment of each field's relative intellectual merits.[5] But imagine students had already enrolled in, paid for, and begun taking an astronomy class when the university began teaching them astrology instead. In a breach of contract action predicated on the university's failure to provide the agreed-upon instruction, the virtues of astronomy over astrology would be irrelevant. Instead, the inquiry would be more straightforward: Did the students get what they bargained for?[6]

In this case, Plaintiff does not seek judicial review of an academic judgment. Neither Plaintiff (nor the Court, for that matter) challenge the educational merits of Defendant's decision to move classes online during a global pandemic. In fact, the Court emphatically believes that Defendant made the right choice. But that's beside the point. The focus of this case is simply whether Defendant promised something it later failed to deliver. **[*8]** To answer that question, the Court need not wade into the nuances of educational or public health policy, but rather make an objective assessment

---

[4] *See, e.g., Ross v. Creighton Univ., 957 F.2d 410 (7th Cir. 1992)* (university reneged on its commitment to provide student-athletes with specific tutoring services); *Andre v. Pace University, 170 Misc. 2d 893, 655 N.Y.S.2d 777 (1996)* (university failed to deliver the basic computer programming course promised); *Elliott v. University of Cincinnati, 134 Ohio App. 3d 203, 730 N.E.2d 996 (Ohio Ct. App.1999)* (committee of professors conducting the plaintiff's oral examination was composed of four members instead of five, as mandated by the student bulletin and handbook); *Zumbrun v. Univ. S. Cal., 25 Cal. App. 3d 1, 101 Cal. Rptr. 499 (1972)* (Cal. Ct. App. 1972) (professor declined to give lectures and final exam, and all students received a grade of "B"); **[*7]** *see also Wickstrom v. N. Idaho Coll., 111 Idaho 450, 725 P.2d 155 (Idaho 1986)* (suggesting that breach of contract action could lie where a course failed to present the materials explicitly promised).

[5] Indeed, this hypothetical aligns with the cases cited by Defendant, which simply stand for the proposition that courts should defer to universities' changes to curriculum or degree requirements. *See Mahavongsanan v. Hall, 529 F.2d 448 (5th Cir. 1976)*; *Jallali, 992 So. 2d 338*.

[6] *See also Paladino, 254 N.Y.S.2d at 873, 44 Misc. 2d 863* ("[If] a private school were simply to accept a student's tuition and thereafter provide no educational services, an action for breach of contract might lie. Similarly, if the contract with the school were to provide for certain specified services, such as for example, a designated number of hours of instruction, and the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable.").

of whether Defendant failed to perform on a promise to provide students with in-person instruction and access to campus facilities.

Accordingly, the Court holds that the academic deference doctrine does not prevent judicial inquiry into a university's breach of specific contractual obligations that are unrelated to educational considerations. While Defendant should be given the widest possible latitude for determining what and how to teach, its students remain entitled to the benefit of their bargain.

### B. Plaintiff's Breach of Contract Claim is not an Educational Malpractice Claim

Defendant next argues, "At its core, Plaintiff's [Amended] Complaint is premised on the value of the academic instruction he received, for which he got academic credit. His theory, that the temporary transition to an online learning format is inferior to the in-person instruction he previously received, is not actionable as a matter of law." (Doc. 37, p. 8) (internal citations omitted). To be sure, educational malpractice claims are "not cognizable under Florida law." **[*9]** Rohn v. Palm Beach Cnty. Sch. Bd., No. 11-81408-CIV, 2012 U.S. Dist. LEXIS 180991, 2012 WL 6652940, at *3 (S.D. Fla. Dec. 21, 2012). According to Defendant, Plaintiff's breach of contract and unjust enrichment claims are actually just educational malpractice claims in disguise, so the Amended Complaint should be dismissed. Defendant is incorrect for two reasons.

First, "[T]he party who brings a suit is master to decide what law he will rely upon." The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S. Ct. 410, 57 L. Ed. 716, 1913 Dec. Comm'r Pat. 530 (1913). "[I]t is not left to [d]efendants to decide how [p]laintiffs' claims should be pled." Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc., 6:10-cv-1445, 2010 U.S. Dist. LEXIS 125559, 2010 WL 4941666, at *7 (M.D. Fla. Nov. 3, 2010). In keeping with these principles, the Court rejects Defendant's attempt to recast Plaintiff's Amended Complaint under a legal theory he does not pursue.

Second, the characterization of Plaintiff's Amended Complaint as alleging educational malpractice is wrong. As discussed, Plaintiff's claims do not require judicial inquiry of the educational value of online classes or the academic adequacy of those offerings. Instead, the essence of Plaintiff's claims is that he contracted for in-person classes and received online classes instead—a paradigmatic contract claim. See also Salerno v. Fla. So. Coll., No. 8:20-cv-1494, 2020 U.S. Dist. LEXIS 215349, 2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020) ("[T]he Court underscores that this case is not **[*10]** about the quality of the College's education. . . . This case is simply about an alleged promise to provide in-person learning that was allegedly breached").

Accordingly, the Court declines to dismiss Plaintiff's Amended Complaint based on a cause of action he does not plead.

### C. Plaintiff States a Claim for Breach of Contract

To state a claim for breach of contract in Florida, Plaintiff must establish three elements: (1) the existence of a valid contract, (2) a material breach, and (3) damages resulting from the breach. Gaines v. Robinson Aviation (RVA), Inc., No. 6:14-cv-391, 2014 U.S. Dist. LEXIS 168048, 2014 WL 6882934, at *3 (M.D. Fla. Dec. 4, 2014).

In Florida, a student's relationship with a private university is "solely contractual in character." Sirpal v. Univ. of Miami, 509 F. App'x 924, 929 (11th Cir. 2013)[7] (quoting Jallali, 992 So. 2d at 342). The terms of a student's contract with the university "may be derived from university publications such as the student handbook and catalog." Id. Such publications are terms of an "implied-in-fact contract" rather than an express contract. Sharick v. Se. Univ. of Health Sci., Inc., 780 So. 2d 136, 138 (Fla. 3d DCA 2000). Accordingly, courts recognize "the proposition that a student handbook or publication can create contractual obligations on the part of [the] university that are not necessarily limited to the 'service' of providing a college degree." Orzechowitz v. Nova Se. Univ. **[*11]** , No. 13-62217-CIV, 2014 U.S. Dist. LEXIS 43674, 2014 WL 1329890, at *3 (S.D. Fla. 2014).

Another court within this district applied these principles to deny a nearly identical breach of contract claim. Salerno, 2020 U.S. Dist. LEXIS 215349, 2020 WL 5583522, at *5. The court explained:

> The crux of the College's motion [to dismiss] is that the amended complaint does not identify a specific

---

[7] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." Bonilla v. Baker Concrete Constr., Inc., 487 F.3d 1340, 1345 (11th Cir. 2007).

contractual provision that establishes that the College had an obligation to provide "in-person educational services" for the entire Spring 2020 semester. The Court disagrees based on its careful review of the amended complaint. Throughout the amended complaint, [the plaintiff] alleges that the College's publications clearly implied that courses would be conducted in-person. The College's materials also touted its many resources and facilities—all of which were located on the campus thereby implying in-person participation. These allegations are sufficient at this early stage, especially because Florida law recognizes that the college/student contract is typically implied in the College's publications. In other words, this is not a typical contract situation where there is an express document with delineated terms that a plaintiff can reference. It is more nebulous.

*Id.* The same analysis applies here. The Amended Complaint is replete **[*12]** with specific references to Defendant's publications and related materials that imply a contract for on-campus instruction and services. (*See, e.g.*, Doc. 32, ¶¶ 21-57, 108-115).[8] These allegations are more than sufficient to survive a motion to dismiss.

Defendant disavows any contractual obligations beyond the provision of academic credits in exchange for tuition. According to Defendant, that is the full extent of its contract with students, and "[a]ny other 'experiential' component, such as the 'rich and robust social experience students can expect from an on-campus education,' is simply not part of the education contract." (Doc. 37, p. 16) (internal citations omitted). Instead, the "intangible learning benefits" derived from campus life "are not acquired through a tuition-related contract; instead, they are free, tangential benefits that coincide with a campus education." (*Id.* at p. 13). But this assertion is belied by Defendant's tuition and fee structure. The on-campus experience is far from "free"— Embry-Riddle students pay "nearly *four times* the tuition, as well as more in fees, to accept the University's offer to attend in-person classes at one of Embry-Riddle's physical **[*13]** campuses instead of seeking the cheaper online-only option." (Doc. 41, p. 16) (citing Doc. 32, ¶¶ 31, 68, 109). Surely those on-campus students are paying for *something*. Therefore, the Court rejects Defendant's argument that it "neither charges nor does Plaintiff pay for" anything beyond academic credits. (Doc. 37, p. 17).

Defendant makes a similar argument that "the [Amended] Complaint is silent with respect to any contractual damages allegedly suffered by Plaintiff as a result of lost on-campus experiences between March and May 2020 during the global pandemic." (Doc. 37, p. 14).[9] In other words, Plaintiff's damages are *de minimus* because he still received academic instruction (albeit in a different format) and course credit. The Court disagrees. Following Defendant's logic, a theatergoer who paid to see Hamilton on Broadway would suffer no damages if the theater shut down, kept his money, and allowed him to watch a recording of Hamilton on Disney+. The two experiences are simply not the same and, therefore, have different values. Neither the theatergoer nor Plaintiff should be required to accept less than what they bargained for.

Thus, the Court holds that Plaintiff has adequately pled **[*14]** a breach of contract claim.

### D. Unjust Enrichment

Under Florida law, unjust enrichment claims require that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knows of the benefit and voluntarily accepts and retains it; and (3) the

---

[8] Defendant characterizes its statements as mere puffery. "For example, Plaintiff's reference that the University 'offers a first-rate education' or 'gorgeous residential campuses' cannot be the basis of Plaintiff's contract claim." (Doc. 20, p. 27). While the *gorgeousness* of a residential campus may be too subjective to be actionable, the *existence* of a residential campus is a statement of fact. The Court rejects this argument.

[9] Defendant also points out that Plaintiff received a scholarship worth approximately one-third of his tuition and fees, the implication being that Plaintiff cannot recover damages because Defendant has already been so "generous." (Doc. 37, p. 14). Perhaps this would be true if Plaintiff had received a full scholarship, but Plaintiff only received a partial scholarship—he still paid $12,000 for the spring 2020 term. (*Id.* at p. 3). Defendant points to no authority suggesting that plaintiffs lose the ability to sue when they drive a hard bargain or purchase a product at a discount.

Relatedly, Defendant appears to argue that Plaintiff cannot allege that he "personally paid" for any of his tuition or fees because he paid using student loans. (*Id.* at p. 4). As Plaintiff correctly responds, Defendant's argument suggests that consumers who use credit cards or purchase homes with mortgages lose standing to assert contract claims. That is, of course, not the law.

circumstances are such that it would be inequitable for the defendant to retain the benefit. See Duty Free World v. Miami Perfume Junction, Inc., 253 So. 3d 689, 693 (Fla. 3d DCA 2018). Here, Plaintiff alleges that: (1) he conferred a benefit on Defendant (*i.e.*, tuition and fees); (2) Defendant was aware of, accepted, and retained his tuition and fees payments; and (3) it would be inequitable for Defendant retain all of those payments after closing its campus. (Doc. 32, ¶¶ 131-38).

Defendant first challenges Plaintiff's unjust enrichment claim because such claims are incompatible with breach of contract claims. (Doc. 37, p. 22). "It is well settled in Florida that . . . a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." Wiand v. Wells Fargo Bank, N.A., 86 F. Supp. 3d 1316, 1332 (M.D. Fla. 2015). However, Defendant vehemently disputes the existence of a contract for on-campus education and related services. Where parties dispute the existence of an underlying contract, dismissal of Plaintiff's unjust enrichment **[*15]** claim is premature. See Salerno, 2020 U.S. Dist. LEXIS 215349, 2020 WL 5583522, at *5 (holding the same in a similar COVID-19 case). Even more important, courts consistently allow plaintiffs to allege alternative claims. *Id.* (collecting cases). Accordingly, Plaintiff may plead both breach of contract and unjust enrichment claim at this stage of litigation.

Defendant also argues that Plaintiff derived a "substantial benefit" from his payment of tuition and fees. (Doc. 37, p. 24). Defendant's primary supporting authority for this proposition is Alvarez v. Royal Caribbean Cruises, Ltd., 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012). In *Alvarez*, the plaintiffs were cruise ship passengers who suffered a "terrible and totally avoidable ordeal" when the defendant temporarily misplaced their luggage. Id. at 1336. "The gravamen of the complaint [was that the plaintiffs] spent approximately seven or eight hours without luggage and, upon discovering their suitcases onboard, were forced to carry their own bags to their state room, which was on the same floor as the unattended luggage." *Id.* The court denied the plaintiffs' unjust enrichment claim because they "derived a substantial benefit from [their] payment"—namely, they "remained on board the ship for the duration of the cruise which is, presumably, the benefit of a contract for passage by sea." Id. at 1341 **[*16]** . By contrast, Plaintiff here alleges to have paid for on-campus instruction and access to campus facilities, which he did not receive for approximately half of the spring 2020 semester. The Court finds that *Alvarez* is factually inapposite.[10]

Furthermore, Plaintiff correctly notes that the "'substantial benefit' inquiry is merely part of the determination of whether the circumstances are such that it would be equitable for the defendant to retain the benefit." (Doc. 41, p. 24). Indeed, in *Pensacola & A. R. Co. v. Braxton, 16 So. 317, 321 (Fla. 1894)—, 34 Fla. 471*the sole case cited by *Alvarez* on this point—the court held that "money paid under a mistake of facts cannot be reclaimed, where the plaintiff has derived a substantial benefit from the payment . . . [because the] right to recovery in such cases turns upon the question as to whether the party receiving the money paid by mistake can, in good conscience, retain it." *Id.* Therefore, even if Plaintiff received a substantial benefit from his payments of tuition and fees, it may still be inequitable for Defendant to retain their full value. Because this is a question of fact, the matter cannot be decided on a motion to dismiss.

## IV. CONCLUSION

On a final note, the Court emphasizes that **[*17]** the issue of liability in this case "has in principle nothing to do with fault. It has to do with wealth being in one person's hands when it should be in another person's." Florida v. Tenet Healthcare Corp., 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) (discussing unjust enrichment). As another Florida court addressing a similar motion remarked, "The question is not whether [the university] was justified in closing its campus due to an unforeseen pandemic. Rather, the question is where that risk (i.e., the financial burden) should be contractually allocated. That is what this lawsuit is about." Rosado v. Barry Univ. Inc., No. 1:20-CV-21813, 2020 U.S. Dist. LEXIS 204355, 2020 WL 6438684, at *4 (S.D. Fla. Oct. 30, 2020).

Furthermore, the Court expresses no opinion on the merits of Plaintiff's claims at this stage—the Court simply holds that those claims were adequately pled. Accordingly, it is **ORDERED** and **ADJUDGED** that Defendant's Dispositive Motion to Dismiss the Amended

---

[10] Defendant also cites Tikiz Franchising, LLC v. Piddington, No. 17-cv-60552, 2017 U.S. Dist. LEXIS 221704, 2017 WL 878761, at *6-7 (S.D. Fla. Aug. 1, 2017), which relied on *Alvarez* to hold that the plaintiff derived a substantial benefit from his payment of franchise fees because he did in fact receive the franchise. As with *Alvarez*, the present case is factually distinguishable.

Complaint (Doc. 37) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on January 14, 2021.

/s/ Paul G. Byron

PAUL G. BYRON

UNITED STATES DISTRICT JUDGE

**End of Document**