## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MAAZ QURESHI, individually and on behalf of others similarly situated,** | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. 1:20-cv-01141 |
| **AMERICAN UNIVERSITY**, | ) ) | |
| *Defendant.* | ) ) ) | |
| **MATTHEW RABINOWITZ, individually and on behalf of others similarly situated,** | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. 1:20-cv-01454 |
| **AMERICAN UNIVERSITY**, | ) ) | |
| *Defendant.* | ) ) | |
| **DANISH ARIF, individually and on behalf of others similarly situated,** | ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. 1:20-cv-01555 |
| **AMERICAN UNIVERSITY**, | ) ) | |
| *Defendant.* | ) ) ) | |

## PLAINTIFFS' FIFTH NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs Maaz Qureshi, Matthew Rabinowitz, and Danish Arif, individually and on behalf

of all others similarly situated (collectively, "Plaintiffs"), hereby provide this Fifth Notice of

Supplemental Authority from other COVID-19 tuition and fee refund actions related to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss (Dkt. No. 28).

The following opinions and orders deny university defendants' motions to dismiss, supporting plaintiffs' claims on similar grounds:

1). *Moran v. Stonehill College, Inc.*, Civil Action No. 2077CV00431, Memorandum and Order (Mass. Super. Feb. 16, 2021), filed herein as Exhibit A.

2). *In re: University of Miami COVID-19 Tuition and Refund Litigation*, Case No. 20-60851-CIV-SINGHAL, Memorandum and Order (S.D. Fla. Mar. 5, 2021), filed herein as Exhibit B.

3). *Holmes and Student B v. Univ. of Massachusetts*, Case No. 2084CV01025-B, Memorandum and Order (Mass. Super. Mar. 8, 2021), filed herein as Exhibit C.

4). *Seslar, et al. v. Trs. of Purdue University*, Case No. 79D02-2005-PL-000059, Memorandum and Order (Ind. Super. Ct. Mar. 8, 2021), filed herein as Exhibit D.

Additionally, Defendant cites *Oyoque v. DePaul Univ.*, No. 20-C-3431, Memorandum Opinion and Order (N.D. Ill. Feb. 21, 2021) in its fourth Notice of Supplemental Authority (Dkt No. 53). In *Oyoque*, the Court agreed with DePaul and rejected the plaintiffs' claims for breach of contract and unjust enrichment on the basis that plaintiff failed to provide specific contractual terms and that the defendant's own assertions were illusory. The current case is distinguishable from *Oyoque* because here Plaintiffs have cited to specific contractual provisions, detailing what students' payments were in exchange for in the agreement between the parties. Second, Plaintiffs' claim for unjust enrichment is still valid because the contractual terms and the merits of the contract are disputed by Defendant. As such, it is inappropriate to address the merits of any affirmative defenses Defendant may raise at this stage of litigation as they are fact intensive. It is also

important to note that Illinois court's decision is just one of a remarkable few in which defendants' motions to dismiss have not been rejected, in contrast from the overwhelming trajectory of COVID-19 higher education refund cases.  The vast majority of recent decisions have expressly rejected defendants' assertions of educational malpractice in additional to defendants' attempts to dismiss claims for breach of contract and unjust enrichment.

In its fifth Notice of Supplemental Authority, Defendant cites to *Doe v. Brown University*, No. 20-cv-191, Dkt. 44 (D.R.I. Mar. 4, 2021) and *In re Columbia Tuition Refund Action*, No. 20-cv-3208, Dkt. 62 (S.D.N.Y. Feb. 26, 2021).  The combined Rhode Island decision allowed the plaintiffs' claims as to unrefunded fees to proceed.  However, the Rhode Island court determined that defendants' reservation of rights provisions allowed the universities to unilaterally alter any method of instruction.  As discussed in Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss [Dkt. No. 28], the disclaimer relied upon by Defendant that lacks the requisite specificity and consideration, and that attempts to bestow Defendant with the unilateral and unencumbered ability to alter contractual terms between it and its students is legally unenforceable. *See* Pl. Memo. In Opp. at 13.  Therefore, regardless of the opinion of the Rhode Island District Court, Defendant's reservation of rights cannot not be enforced.  The decision in *Columbia* equally affected plaintiffs and defendant.  The court similarly opined that plaintiffs adequately plead a breach of specific contractual provisions in regards to fees.  Similar to the present case, Plaintiffs have sufficiently cited specific contractual promises in the controlling consolidated complaint.  The claims for unjust enrichment were consequently dismissed because the court determined that there was, therefore, an express, underlying contract.  However, this decision was unfit because, in New York as in D.C., parties may plead causes of action in the alternative.

Plaintiffs respectfully request that the recent decisions cited by Plaintiffs further

Plaintiffs' position in this matter in opposition of Defendant's Motion to Dismiss.

Dated: March 12, 2021

Respectfully Submitted:

**DOUGLAS & BOYKIN PLLC**

/s:/ *Curtis A. Boykin*
Curtis A. Boykin, DC Bar 444120
1850 M Street, NW, Suite 640
Washington, District of Columbia 20036
(202) 776-0370
caboykin@douglasboykin.com

**ANASTOPOULO LAW FIRM, LLC**
Eric M. Poulin*
Roy T. Willey, IV*
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (admitted *pro hac vice*)
Sarah N. Westcot (admitted *pro hac vice*)
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
scott@bursor.com
swestcot@bursor.com

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq. (admitted *pro hac vice*)
Jeremy Francis, Esq. (admitted *pro hac vice*)
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Telephone: (845) 483-7100
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

*Co-Lead Interim Class Counsel*

**ATTORNEYS FOR PLAINTIFF(S)**

\* Admitted via *pro hac vice*

## CERTIFICATE OF SERVICE

I, Curtis A. Boykin, hereby certify that on March 12, 2021 a true and correct copy of the instant notice was served via the Court's electronic filing system to all counsel of record.

/s/ *Curtis A. Boykin*
Curtis A. Boykin

# **EXHIBIT A**

*Moran v. Stonehill College, Inc.*, Civil Action No. 2077CV00431, Memorandum and Order (Mass. Super. Feb. 16, 2021).

22

**COMMONWEALTH OF MASSACHUSETTS**

ESSEX, ss.                                                  **SUPERIOR COURT**
                                                              **CIVIL ACTION**
                                                              **No. 2077CV00431**

**PAUL MORAN[1]**

**vs.**

**STONEHILL COLLEGE, INC.**

**MEMORANDUM OF DECISION AND ORDER**
**ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff Paul Moran ("Moran") brings this suit against defendant Stonehill College, Inc.

("Stonehill") on behalf of himself and a proposed class of numerous other similarly situated

persons to recover monies Stonehill received in consideration for tuition, room and board, and

other fees related to on-campus amenities despite the cancellation of on-campus instruction and

the closure of its on-campus facilities due to the COVID-19 pandemic. The First Amended

Complaint and Demand for Jury Trial ("First Amended Complaint") seeks compensation for the

services and benefits of the on-campus experience and in-person instruction not received as a

result of the closure of Stonehill's campus during the Spring 2020 semester. It alleges the

following four counts: (I) breach of contract; (II) violations of G. L. c. 93A, § 2; (III) unjust

enrichment; and (IV) declaratory judgment. The matter is now before the court on Stonehill's

motion to dismiss pursuant to Mass. R. Civ. P. 12(b)(6) (Paper No. 13). After a hearing on the

motion on November 17, 2020, and for the reasons that follow, the motion to dismiss is

**ALLOWED** in part and **DENIED** in part.

---

[1] On behalf of himself and all others similarly situated

## **BACKGROUND**

The following facts are taken from the allegations of the First Amended Complaint (Paper No. 7).

Stonehill is a private college principally located in Easton, Massachusetts. Moran's son is a full-time Stonehill student who resided on campus at the start of the 2019/2020 academic year. Moran made payments to Stonehill on behalf of his son for fees, room and board, and tuition for the 2019/2020 academic year.

The First Amended Complaint alleges that, to entice students to attend, Stonehill touts its in-person, hands-on curriculum. Stonehill's website markets to prospective students the benefits it provides with its "beautiful 384-acre" on-campus experience. Its educational marketing materials also emphasize the benefits of living on campus, saying: "Your residence life experience will give you the opportunity to learn more about yourself as you come to know people from different backgrounds and cultural experiences – all of which will help you learn and grow and prepare you for life after college." Stonehill also promotes its small class size and 12:1 student/faculty ratio as another reason to attend the college. According to the First Amended Complaint, the success of Stonehill's marketing campaign is demonstrated by the fact that eighty-nine percent of its students choose to live on and learn at Stonehill's campus.

Stonehill charged the following amounts for Moran's son for the 2019-2020 academic year: $46,642 as tuition; $16,520 for room and board; a $100 room guarantee fee; $2,702 for student health insurance; a $30 registration fee; a $30 recreational center fee; a $50 technology fee; a $150 resident parking fee; and $150 for his meal plan. Stonehill charged members of the proposed class the same types of fees.

2

On March 16, 2020, Stonehill ordered all students to leave campus for the remainder of the Spring 2020 semester due to the COVID-19 pandemic. That same day, Stonehill closed the school's facilities and canceled all in-person classes, events, and services. Stonehill informed its students that all classes would resume online.

Following the closure, Stonehill offered only the following partial refunds to Moran and members of the proposed class: a credit of forty-two percent of the semester's room and board charge (totaling $2,160);[2] and a refund of all unused dollars on the semester's meal plans. The First Amended Complaint alleges Stonehill's offer to provide a $2,160 "credit" for the Spring 2020 semester room charge is unfair, that Stonehill was not authorized to retain that amount for use for future semesters, and that Stonehill's retention of the credit has caused harm to Moran and members of the proposed class.

Moran also alleges that Stonehill is unfairly profiting from the closure necessitated by the pandemic because it has refused to return funds for services it cannot provide. Besides room and board charges, the closure of on-campus classes and activities prevented Stonehill's students from receiving the benefit of forty-two percent of the fees paid for the Spring 2020 semester. Stonehill's refund plan does not include a pro rata reimbursement for any of the fees paid for services not provided due to the campus closure (e.g., the recreational center, technology, and parking fees).

The First Amended Complaint also seeks compensation for the difference in value between in-person education and online instruction. Moran alleges that Stonehill itself acknowledges the superiority of in-person versus online instruction, as Stonehill's tuition and

---

[2] Although not explained in the First Amended Complaint, the court infers that this forty-two percent calculation is based on the amount of the Spring 2020 semester that was remaining at the time of the closure of Stonehill's campus on March 16, 2020.

fees for in-person instruction are higher than its tuition and fees for online instruction. According to the First Amended Complaint, Moran's son and members of the proposed class chose to attend Stonehill for the on-campus experience and in-person instruction.

As a result of the closure, Moran's son has not received the services and access Moran paid for the Spring 2020 semester. Moran's son and members of the proposed class were deprived of the following during the Spring 2020 semester: in-person interaction with professors, mentors, and peers; access to facilities such as computer labs, study rooms, and the library; the opportunity to participate in student governance and extra-curricular activities and groups; and other services and amenities for which they had paid. The First Amended Complaint alleges that the value of online instruction is less than that of in-class instruction, as reflected by the fact that Stonehill charges less for the former. Despite this, Stonehill has failed to refund any portion of Moran's son's and the proposed class members' Spring 2020 semester tuition and fee payments.

## **DISCUSSION**

### I.    Standard of Review

To survive a motion to dismiss under Mass. R. Civ. P. 12(b)(6), a complaint must allege facts "plausibly suggesting . . . entitlement to relief[.]" Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). Detailed factual allegations are not required, but the plaintiff must present more than mere "labels and conclusions," such that the alleged facts "raise a right to relief above a speculative level." Id., quoting Twombly, 550 U.S. at 555. In determining whether a complaint meets this standard, the court accepts the factual allegations in the complaint as true and draws reasonable inferences in favor of the plaintiff. Harrington v. Costello, 467 Mass. 720, 724 (2014).

In considering a motion to dismiss, the court is generally limited to the four corners of the complaint unless the court converts the motion to one for summary judgment. There are exceptions to this general rule. The court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" without converting the motion to one for summary judgment. Reliance Ins. Co. v. Boston, 71 Mass. App. Ct. 550, 555 (2008), quoting Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). The court may also consider documents not attached to the complaint, but upon which the plaintiff relied in framing the complaint, in reviewing a motion to dismiss. Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004).

II.    Analysis

a.    The First Amended Complaint Does Not Allege Educational Malpractice

Stonehill first argues that the First Amended Complaint must be dismissed because Moran's claims for breach of contract, violation of G. L. c. 93A, and unjust enrichment are actually claims for educational malpractice, which have not been recognized as actionable in Massachusetts. Surprisingly, given the number of institutions of higher learning in the Commonwealth, Massachusetts' position regarding the viability of educational malpractice claims is unclear. Many other jurisdictions, however, reject such claims based on a reluctance to second guess the judgments and conduct of professional educators and due to the risk of interfering with the right to academic freedom grounded in First Amendment protections.

Regardless of the viability of educational malpractice claims in Massachusetts, the court concludes that the First Amended Complaint does not allege educational malpractice. Moran does not challenge the judgment or conduct of his son's educators, or Stonehill's right to academic freedom and the discretion to operate its educational programs without unwarranted

5

judicial intervention. He does not challenge the substance of Stonehill's educational programming in a way that implicates First Amendment concerns. In addition, Moran does not challenge the necessity of the closure of Stonehill's campus due to the pandemic. The question raised by the First Amended Complaint is not whether Stonehill was justified in closing its campus, but rather where that risk and financial burden should be contractually allocated. See Rosado v. Barry Univ., C.A. No. 1:20 CV-21813-JEM, 2020 WL 6438684, at *4 (S.D. Fla. Oct. 30, 2020).

Moran's claims are more akin to a garden variety breach of contract action. He simply alleges that he paid for the use of certain services and facilities, and did not receive the benefit for which he bargained. In several cases where students have brought similar claims seeking tuition reimbursement after universities closed campuses and moved all in-person classes online in response to the pandemic, courts have rejected the defendant universities' arguments that such claims are educational malpractice claims not recognized by law. See Ford v. Rensselaer Polytechnic Institute, C.A. No. 1:20-CV-470, 2020 WL 7389155, at *6 (N.D.N.Y. Dec. 16, 2020) (rejecting defendant's argument that plaintiffs' breach of contract claim was educational malpractice claim because plaintiffs did not challenge merits of defendant's decision to shift to remote learning, but only argued that "the value of the on-campus experience defendant plausibly promised them is greater than the value of the remote experience they received"); Zahn v. Ohio Univ., C.A. No. 2020-371JD, 2020 Ohio Misc. LEXIS 230, at *5 (Ohio Ct. Cl. Oct. 19, 2020) (rejecting defendant's argument that plaintiff's breach of contract claim for switching from in-person instruction to online courses was educational malpractice claim); Waitt v. Kent State Univ., No. 2020-00392JD, 2020 WL 5894543 at *2 (Ohio Ct. Cl. Sept. 28, 2020) (same); Smith

v. The Ohio State Univ., No. 2020-321JD, 2020 WL 5694224, at *2 (Ohio Ct. Cl. August 24, 2020) (same).

      b.   Breach of Contract (Count I)

      Stonehill next claims that Moran's breach of contract claim fails as a matter of law because it fails to identify any contractual provision breached by Stonehill, fails to allege any specific contractual language by which Stonehill promised to provide wholly in-person instruction, and raises only conclusory allegations that Moran's son received a lessened quality of education when Stonehill transitioned to online instruction. The court disagrees and concludes that the allegations of the First Amended Complaint are sufficient plausibly to suggest an entitlement to relief under a breach of contract theory.

      To state a claim for breach of contract, a plaintiff must allege "that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016), citing Singarella v. Boston, 342 Mass. 385, 387 (1961). Here, Moran alleges that he and members of the proposed class entered into binding contracts with Stonehill through the admission agreement and payment of tuition and fees. As part of the contract, Stonehill promised to provide certain services and use of amenities, in-person instruction, and other services for which Moran and other members of the proposed class had paid. In particular, Moran alleges that the parties' agreement included the expectation of in-person instruction. In support of this allegation, the First Amended Complaint points to: (1) Stonehill's website and marketing materials touting its on-campus experience as a central part of what Stonehill has to offer its students; and (2) the fact that, given the choice between in-person

instruction and the less-expensive option of online instruction, Moran's son and other members of the proposed class chose the in-person option. Moran alleges that, due to the closure of its campus in March 2020, Stonehill has failed to provide the promised services and access to amenities fully, thereby depriving Moran's son and other class members of the experience and services for which they paid. As a result, Moran seeks reimbursement of certain tuition, fees, and other amounts that Stonehill collected for services Stonehill failed to deliver fully.

As the coronavirus pandemic resulted in the closure of educational institutions across the United States in March 2020, this is not the only case of its kind. Both parties have provided the court with recent cases supporting their respective positions. Of note are two cases currently pending in the United States District Court for the District of Massachusetts, both of which were recently before the same judge (Stearns, J.) on motions to dismiss similar to the one presently before this court.

In Chong v. Northeastern University, C.A. No. 1:20-10844-RGS (D. Mass. Oct. 1, 2020), the court dismissed, without prejudice, the plaintiff students' breach of contract claim seeking partial reimbursement of tuition to compensate for the inferiority of online instruction, holding that the "plaintiffs fail to state a claim because they have not plausibly established that the parties' agreement included a right to in-person instruction." Chong, slip op. at 6. The court also allowed the motion to dismiss with respect to the plaintiffs' breach of contract claim related to a student activity fee, student center fee, and undergraduate student fee because those fees were imposed to "support" (rather than to gain access to) certain facilities during terms for which students are enrolled in classes, but denied the breach of contract claim related to a campus recreation fee because payment of that fee gave students the option to gain admission to home athletic events and use fitness facilities. Id. at 10-11.

The court reached a different result in In re: Boston University COVID-19 Refund Litigation, C.A. No. 1:20-10827-RGS (D. Mass. Jan. 7, 2020), denying Boston University's motion to dismiss the plaintiff students' breach of contract claims premised on the failure to provide in-person instruction and the closure of on-campus facilities and resources. In re: Boston University COVID-19 Refund Litigation, slip op. at 6-9. The court rejected the argument that the plaintiffs failed to articulate any legal basis for a contractual right to in-person instruction, pointing to the plaintiffs' allegation that representations in the defendant's course registration materials implied that they would receive traditional, in-person instruction at physical locations on campus. Id. at 6. The court concluded that it could not say, as a matter of law, "that no student could have reasonably expected that paying the tuition charged for the Spring semester of 2020 and registering for on-campus courses would entitle them to in-person instruction," and noted that it "need[ed] the benefit of further factual development of the contractual claims to resolve the issue on the merits." Id. at 6-7. The court reached the same result with respect to the plaintiffs' claims for reimbursement of fees, explaining, "the court cannot say, as a matter of law, that plaintiffs could not have reasonably expected that their payment of mandatory fees would grant them access to at least some of the on-campus facilities and resources shut down by BU on March 22, 2020." Id. at 8.

What this court takes from the divergent outcomes in these two cases is the importance of the particular allegations raised by the plaintiffs and the nature of the record before the court. Here, Moran bases the breach of contract claim as it relates to tuition on Stonehill's website and marketing materials touting its on-campus experience as a central part of what Stonehill has to offer its students, as well as the fact that Stonehill specifically offers the option of in-person, on-campus instruction for one price, and a separate, less expensive online instruction option. The

9

court concludes that these allegations plausibly establish that the parties' agreement included a

right to in-person instruction.[3] As in In re: Boston University COVID-19 Refund Litigation, this

court cannot say, as a matter of law, that Moran could not have reasonably expected that paying

the in-person tuition rate charged for the 2020 Spring semester and registering for on-campus

courses would entitle his son to in-person instruction.

Several cases brought by students against colleges and universities seeking

reimbursement of tuition and fees after campuses were shuttered and classes moved online due to

the pandemic have reached the same result. See Rosado, C.A. No. 1:20 CV-21813-JEM, 2020

WL 6438684, at *3 (S.D. Fla. Oct. 30, 2020) (denying motion to dismiss breach of contract

claim based on defendant's closure of campus and transition to online classes due to pandemic

where defendant charged more for on-campus instruction than online instruction, and

defendant's publications clearly implied in-person instruction and touted its many on-campus

resources and facilities); Salerno v. Florida S. College, C.A. No. 8:20-cv-1494-30SPF, 2020 WL

5583522 at *5 (M.D. Fla. Sept. 16, 2020) (denying motion to dismiss breach of contract claim

based on defendant's closure of campus and transition to online classes due to pandemic where

defendant's publications clearly implied in-person instruction and touted its many on-campus

resources and facilities); Milanov v. University of Michigan, C.A. No. 20-000056-MK, 2020

---

[3] The court is not persuaded by Stonehill's argument that Moran "does not dispute that [his son]
received full credit for his Spring 2020 courses, which is all that Stonehill agreed to provide in
exchange for the tuition and fees that were paid." (Def.'s Mem., Paper No. 13.1, p. 14.) This
appears to be an obvious oversimplification of any agreement between a student and an institute
of higher learning. As another court explained in response to a defendant university's similar
argument that any breach resulting from the transition to online teaching was de minimis because
the student still earned credits toward a diploma: "This is kind of like purchasing a Cadillac at
full price and receiving an Oldsmobile. Although both are fine vehicles, surely it is no
consolation to the Cadillac buyer that the 'Olds' can also go from Point A to Point B." Rosado v.
Barry Univ., C.A. No. 1:20 CV-21813-JEM, 2020 WL 6438684, at *4 (S.D. Fla. Oct. 30, 2020).

Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. July 27, 2020) (denying motion for summary disposition

on plaintiffs' breach of contract claims seeking reimbursement of pro rata portion of amounts

paid for in-person instruction, housing, meals, and student activities following closure of campus

and transition to allegedly inferior online instruction due to pandemic); Ford, C.A. No. 1:20-CV-

470, 2020 WL 7389155, at *7 (denying motion to dismiss breach of contract claim); Zahn, C.A.

No. 2020-371JD, 2020 Ohio Misc. LEXIS 230, at *3, 6-7 (ruling that plaintiff stated claim for

breach of contract where complaint specifically alleged that tuition and fees for defendant's

online classes are significantly less expensive than those for on-campus classes); Smith, No.

2020-321JD, 2020 WL 5694224, at *2 (ruling that plaintiff's allegation that she contracted for

in-person classes and received online classes instead stated claim for breach of contract).

The court reaches the same conclusion with respect to the breach of contract claim as it

relates to the room and board credit and various fees. The First Amended Complaint alleges that

Stonehill breached its contract with Moran and other proposed class members by offering a

credit of forty-two percent of the semester's room and board charge (rather than a refund), and

failing to return any portion of the various fees paid to Stonehill. The room and board charges

and at least some of the fees charged (e.g., the recreational center and resident parking fees)

appear, by their very names, to be assessed based on the premise that they grant access to some

of the on-campus facilities shut down by Stonehill in March 2020. As a result, dismissal at this

early stage is inappropriate.

As in In re: Boston University COVID-19 Refund Litigation, further factual development

of the breach of contract claim is necessary to resolve these issues on the merits. At this stage in

the proceedings, the court has only the allegations of the First Amended Complaint and certain

documents that may form part of the agreement between the parties. Stonehill's motion to

dismiss is accompanied by the Affidavit of Thomas V. Flynn, General Counsel and Clerk at Stonehill, which attaches and authenticates several excerpts from "The Hill Book." According to Flynn, "The Hill Book serves as the online, accredited version of the Stonehill College Academic Catalog which contains information about the College's academic programs and partnerships, degree requirements, course offerings, admission and financial information, and College academic policies and resources." The First Amended Complaint does not specifically identify The Hill Book as forming the basis for the contract between Moran and Stonehill and, to the extent it does, the excerpts attached to Flynn's affidavit are just that, excerpts. The entire contract is not before the court, and it is unclear to what extent Moran relied on The Hill Book in framing the First Amended Complaint. The excerpts submitted by Stonehill do not address either Moran's allegation that Stonehill charges less for online instruction, or Stonehill's retort at the motion to dismiss hearing that the online instruction offered by Stonehill is an entirely different caliber of courses and instructors. It would be inappropriate for the court to dismiss the breach of contract claim on this incomplete record.

    c.  Count II, Violations of G. L. c. 93A, § 2, Fails as a Matter of Law

    The First Amended Complaint alleges that Stonehill's refusal to refund tuition payments, room and board, and fees following the March 2020 closure of its campus constitutes an unfair and deceptive business practice in violation of G. L. c. 93A, § 2. Stonehill seeks dismissal of this count on grounds that G. L. c. 93A does not apply to Stonehill because it is a charitable corporation not engaged in trade or commerce. The court agrees.

> Chapter 93A makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." G. L. 93A, § 2(a). It is well established law that while "[a]n entity's 'status as a charitable corporation is not ... dispositive of the issue whether ch. 93A applies[,]' ... [i]n most circumstances, a charitable institution will not be engaged in trade

> or commerce when it undertakes activities in furtherance of its core mission." Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 23, 26 (1997), quoting Planned Parenthood Fed'n of Am. v. Problem Pregnancy of Worcester, Inc., 398 Mass. 480, 492-493 (1986). Such claims may properly be dismissed for failing plausibly to allege that the defendant is engaged in trade or commerce. See Poznik v. Massachusetts Med. Prof. Ins. Ass'n, 417 Mass. 48, 52-53 (1994).

Squeri v. Mount Ida Coll., 954 F.3d 56, 72 (1st Cir. 2020). "[T]he words 'trade' and 'commerce' in ch. 93A, § 1(b) do not traditionally mean the provision of education to students at a not-for-profit college." Id. at 73, citing Planned Parenthood, 398 Mass. at 493-494.

Moran contends that Stonehill's refusal to refund tuition and fees cannot be considered part of its core charitable mission. This argument, however, construes the issue too narrowly. While Moran challenges the amount and nature of the compensation Stonehill offered, Stonehill's decision to reimburse certain charges but not others was part of Stonehill's larger process of deciding how best to continue educating its students when a pandemic forced it to shutter its campus and made in-person instruction impossible. As Stonehill's decisions regarding its response to the pandemic were made in the context of furthering its core mission of educating its students, it was not engaged in trade or commerce and Chapter 93A does not apply. Compare Squeri, 954 F.3d at 73 (college's alleged failure to follow through on proposed merger with another college, failure to disclose financial distress, and transfer of students' financial and academic information to prospective successor institution were activities taken in furtherance of college's charitable mission of education and Chapter 93A did not apply), with Linkage, 425 Mass. at 23-26 (where private commercial company brought suit for breach of contract to run offsite training program at university's conference center, university was engaged in trade or commerce and Chapter 93A applied). For these reasons, the court will dismiss Count II of the First Amended Complaint.

### d.  Unjust Enrichment (Count III)

As an alternative to the breach of contract claim alleged in Count I, the First Amended Complaint also includes a claim for unjust enrichment. A claim for unjust enrichment is based on the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005). To prevail on such a claim, a plaintiff must show that: 1) the plaintiff conferred a benefit on the defendant; 2) the defendant knew of the benefit; and 3) acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value. Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (interpreting Massachusetts law).

Stonehill first argues that Moran cannot, as a matter of law, state a claim for unjust enrichment because he has an adequate alternative remedy available, namely, his breach of contract claim. It is true that "a claim for unjust enrichment is not available when there is a legal remedy for breach of contract." CACH, LLC v. Yue Fang, 95 Mass. App. Ct. 1119, 3 n.2 (2019) (unpublished Rule 1:28 decision), citing Santagate, 64 Mass. App. Ct. at 329. Stonehill, however, disputes the existence of any contract between the parties requiring in-person instruction. It would, as a result, be inappropriate for the court to conclude that Moran is limited to a contractual remedy at this juncture. See In re: Boston University COVID-19 Refund Litigation, C.A. No. 1:20-10827-RGS, slip op. at 10 (denying motion to dismiss unjust enrichment claim where defendant university disputed existence of contract requiring in-person instruction or access to on-campus facilities and resources).

Stonehill also contends that dismissal of the unjust enrichment claim is required because Moran does not adequately allege the essential elements of unjust enrichment. The court

disagrees. "Unjustness is 'a quality that turns on the reasonable expectations of the parties.' " Id.,

quoting Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 644 (2013). Here, Moran alleges

that he reasonably expected that his son would receive in-person instruction and access to on-

campus facilities and resources in return for payment of tuition and fees and that Stonehill failed

to provide these services and access. The court cannot say, as a matter of law, that no reasonable

juror taking these allegations as true could find that Stonehill's failure to refund at least a portion

of the tuition and fees paid by the plaintiff was unjust under the circumstances. As a result,

dismissal of the unjust enrichment claim at this juncture is not warranted. See id. at 11 (declining

to dismiss unjust enrichment claim based on similar allegations).

       e.  Declaratory Judgment (Count IV)

Stonehill moves to dismiss Moran's declaratory judgment count on grounds that it is

"duplicative and unnecessary, given the clear terms governing the Stonehill-student

relationship." (Def.'s Mot., Paper No. 13, p. 2.) The court disagrees and declines to dismiss

Count IV at this juncture. The declaratory judgment count seeks a form of relief different from

the other counts of the First Amended Complaint and, as the court's analysis of the breach of

contract claim demonstrates, the terms governing the relationship between Stonehill and Moran

are far from clear at this juncture.

       f.  A Force Majeure Clause Does Not Bar Moran's Claims

Stonehill also briefly argues that Moran's claims are barred by a force majeure clause in

The Hill Book. A section of The Hill Book entitled "Delivery of Services" includes the following

language: "Stonehill College assumes no liability for the delay or failure in providing

educational or other services or facilities due to causes beyond its reasonable control." (Aff. of

Thomas V. Flynn, Paper No. 13.2, at Ex. C.) However, the record before the court does not

establish as a matter of law the necessary elements for invoking such a clause. Moreover, a force majeure clause (if properly invoked) simply excuses performance; it does not allow a non-performing party to retain funds for services for which it was paid but did not provide.

g.   Moran's Alleged Damages Are Not Too Speculative to Permit Recovery

The court also rejects Stonehill's argument that the breach of contract and unjust enrichment claims fail as a matter of law because the damages sought are too speculative to permit recovery. "While it is true that a plaintiff need not prove damages with mathematical certainty, 'damages cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty.' " Kitner v. CTW Transport, Inc., 53 Mass. App. Ct. 741, 748 (2002), quoting Lowrie v. Castle, 225 Mass. 37, 51 (1916). Although it may be difficult to assess the value of the loss of access to certain on-campus resources (e.g., mentors, peers, and study rooms), Moran's alleged damages are not entirely speculative. For example, a jury could determine damages based on the failure to refund fees by doing the same pro rata calculation Stonehill apparently did when determining the room and board credit it offered, and determine damages for the lesser experience of online learning by considering the different rates Stonehill charges for its on-campus and online learning options. The court is careful to note that it is not specifically approving these theoretical measures of damages. It would be impossible to do so at the motion to dismiss stage, when the court has only a very limited record before it. The court notes these possibilities only to explain why it does not view Moran's alleged damages as impermissibly speculative at this juncture.

## **ORDER**

For the foregoing reasons, defendant Stonehill College, Inc.'s motion to dismiss is

**ALLOWED** as to Count II, and **DENIED** as to Counts I, III and IV. Count II of the First

Amended Complaint and Demand for Jury Trial is hereby **DISMISSED**.

Dated: February 16, 2021

*Janice w. Howe*

Janice W. Howe
Justice of the Superior Court

17

**EXHIBIT B**

*In re: University of Miami COVID-19 Tuition and Refund Litigation*, Case No. 20-60851-CIV-SINGHAL, Memorandum and Order (S.D. Fla. Mar. 5, 2021)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED ACTION

CASE NO. 20-60851-CIV-SINGHAL
CASE NO. 20-22207-CIV-SINGHAL
CASE NO. 20-22316-CIV-SINGHAL
CASE NO. 20-22594-CIV-SINGHAL

IN RE: UNIVERSITY OF MIAMI COVID-19
TUITION AND FEE REFUND LITIGATION

_____/

## ORDER

**THIS CAUSE** is before the Court upon University of Miami's Motion to Dismiss

Consolidated Class Action Complaint with Prejudice (DE [52]).   The parties have fully

briefed the Motion and the matter is ripe for review.   For the reasons discussed below,

the Motion is granted in part and denied in part.

I. BACKGROUND

In early 2020, the COVID-19 pandemic upended 21st century life, causing a

worldwide shut-down of commercial, religious, cultural, and educational institutions.   On

March 17, 2020, the University of Miami ("UM") closed most of its on-campus facilities

and announced that classes would be conducted in online/remote/distance platforms.

(DE [49], ¶ 65).   The school's physical plant remained closed and students attended

online or remote classes for the remainder of the semester.   Several UM students and

parents of students filed class-action lawsuits[1] seeking a proportionate refund of tuition,

fees, and other semester expenses.

---

[1] Four separate lawsuits were filed asserting similar claims.  Two cases were brought by students Valeria
Dimitryuk and Adelaide Dixon and two cases were brought by Julie Gold and Michael Weiss, parents of
UM students.  On August 5, 2020, the Court consolidated the actions (DE [40]).

Plaintiffs allege that UM breached an express or implied contract to provide in-person education (Counts I and II).  Alternatively, Plaintiffs allege that UM was unjustly enriched by retaining tuition paid for in-person education while offering only on-line education (Count III).  Plaintiffs also allege breach of an express or implied contract with respect to student fees paid for activities and facilities during the semester (Counts IV and V).  Plaintiffs allege that UM breached the fees contracts by making the activities and facilities unavailable for use but not refunding the money paid for those activities or facilities.  Alternatively, Plaintiffs allege that UM was unjustly enriched by retaining fees paid for activities or facilities that were not utilized (Count VI).  Finally, Plaintiffs allege that certain students contracted and paid for UM to provide housing and meals on campus, but UM required students to move out of on-campus housing and cancelled meals without refunding a pro rata portion of the amounts paid.  Plaintiffs allege that the failure to refund a portion of the amounts paid for housing and meals is a breach of contract (Count VII) or, alternatively, unjust enrichment (Count VIII).[2]

UM moves to dismiss the Consolidated Class Action Complaint with prejudice[3] on the grounds that (1) the Complaint is a shotgun pleading; (2) Plaintiffs fail to state a claim upon which relief can be granted; and (3) Plaintiffs Julie Gold and Michael Weiss lack jurisdictional standing.

---

[2] Count VIII is captioned "Enrichment Without Cause" but the text of the Count is clear that Plaintiffs are claiming unjust enrichment (see DE [49], ¶ 242).

[3] Prior to consolidation of the cases, UM had moved to dismiss each of the separate lawsuits.  The Court consolidated the cases, ordered Plaintiffs to file a Consolidated Class Action Complaint, and denied the pending motions to dismiss without prejudice.  UM argues contends that Plaintiffs should not be granted leave to amend.

II. <u>ANALYSIS</u>

A. <u>Shotgun Pleading</u>

Rule 8, Federal Rules of Civil Procedure, requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The opposite of a short and plain statement of the claim is what is known as a "shotgun" pleading. "'Shotgun' pleadings are cumbersome, confusing complaints that do not comply with these pleading requirements. We have repeatedly condemned shotgun pleadings." *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

There are four basic types of shotgun pleadings: (1) those in which each count adopts the allegations of all preceding counts; (2) those that do not re-allege all preceding counts but are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) those that do not separate each cause of action or claim for relief into different counts; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Id.* at 1321–23 (quotations omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

UM argues the Complaint is a shotgun pleading because each count incorporates by reference 89 paragraphs of general allegations and as a result, many of the incorporated allegations have no relation to the count into which they are incorporated.

UM contends that charges for student fees and housing/meal fees are not relevant to plaintiffs' claims for tuition refunds but are nevertheless incorporated into those claims and, thus, the complaint should be dismissed with prejudice.[4]

The Court has carefully reviewed the Complaint and concludes that it is not a shotgun pleading.  Although the Complaint does incorporate allegations of tuition and fee payments into each of the counts, the Complaint is not so "replete with conclusory, vague, and immaterial allegations [that] a defendant who reads the complaint would be hard-pressed to understand the grounds upon which each claim against him rests." *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (cleaned up).  Indeed, each of the counts contains factual allegations specific to that count.  The bases for each count are clear in the Complaint.  The motion to dismiss for being a shotgun pleading is denied.

B.  Failure to State a Claim Upon Which Relief Can Be Granted

Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions;" a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "The mere

---

[4] UM argues that because plaintiffs each filed previous shotgun complaints, the Court must dismiss the present Complaint with prejudice.  *See Vibe Micro, Inc*, 878 F.3d at 1297.  Even if the Court were to dismiss the Complaint as a shotgun pleading, dismissal would be without prejudice.  A non-merits-based dismissal may only be made after the district court identifies the deficiencies in the complaint and gives the plaintiff the opportunity to correct them.  *Id.*  This Court has never addressed the shotgun pleading argument made by UM and, therefore, dismissal with prejudice would not be warranted.

possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss*."* *Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1261 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Authority*, 132 S. Ct. 1702 (2012).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). The court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984*); Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); *see also Iqbal,* 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

UM moves to dismiss the Complaint arguing that Plaintiffs have failed to allege any plausible claims for relief. As a preliminary matter, UM contends that the Plaintiffs' claims are barred in their entirety as a matter of law by Florida's educational malpractice doctrine. Alternatively, UM argues the Plaintiffs have failed to state claims for breach of contract, breach of implied contract, or unjust enrichment.

### 1. Educational Malpractice

Florida courts grant educational institutions wide deference in determining degree requirements and appropriate levels or methods of instruction. *See e.g., Jallali v. Nova Se. Univ., Inc.,* 992 So. 2d 338 (Fla. 4th DCA 2008) (university did not breach contract by

refusing to issue degree to student who did not meet degree requirements); *Tubell v. Dade Cty. Pub. Sch.*, 419 So. 2d 388 (Fla. 3d DCA 1982) (affirming summary judgment for school board on plaintiff's claims that he was inappropriately placed in special education classes for years to his detriment); *Simon v. Celebration Co.,* 883 So. 2d 826 (Fla. 5th DCA 2004) (affirming dismissal of claim under Article IX, section 1 of the Florida Constitution which guarantees a high quality free public education because constitution does not create a private cause of action). UM argues that its decision to offer only remote instruction due to COVID-19 should be given the same deference given to educational institutions in these cases. More precisely, UM argues that Plaintiffs' breach of contract and unjust enrichment claims are actually claims for educational malpractice and thus barred under Florida law. The Court disagrees.

Florida courts recognize that colleges and universities have a legal relationship with their students that is "contractual in nature." *Jallali*, 992 So. 2d at 342 (quoting *John B. Stetson Univ. v. Hunt,* 102 So. 637, 640 (Fla. 1924)). "Under this contract implied in fact, the student 'pays a fee for services' and the private university provides 'an educational experience designed to lead to a . . . degree.'" *Id.* (quoting *Gross v. Family Servs. Agency, Inc.,* 716 So. 2d 337, 339 (Fla. 4th DCA 1998)). The university has the right to determine "the terms under which it will admit and subsequently graduate students who will subject themselves to the rules, regulations, and regimen of the college." *Id.* (quoting *Univ. of Miami v. Militana,* 184 So. 2d 701, 704 (Fla. 3d DCA 1966). Thus, schools will not be compelled to graduate students who did not meet the criteria for graduation as offered in the school's publications at the time of enrollment. *Id.* But Plaintiffs are not challenging UM's criteria for graduation.

6

In this case, Plaintiffs allege that UM's various publications created a contract for in-person instruction and that UM breached that contract by offering only remote instruction in response to COVID-19. Plaintiffs alleged they were damaged because remote instruction was not contemplated and was of lesser value than the in-person instruction they paid to receive. This is not a claim for educational malpractice; it is a claim for breach of contract. "The focus of this case is simply whether Defendant promised something it later failed to deliver." *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.,* 2021 WL 140708, at *4 (M.D. Fla. Jan. 14, 2021) (suit alleging breach of contract due to remote instruction during COVID-19 pandemic not dismissed on grounds of educational malpractice). The "educational malpractice doctrine" does not bar Plaintiffs' claims.

### 2. Breach of Contract

To state a claim for breach of contract, a plaintiff must "plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009). UM moves to dismiss Plaintiffs' claims for breach of contract (Count I – tuition, Count IV – student fees, and Count VII – housing/meals) and for breach of implied contract (Count II – tuition and Count V – student fees) for failure to state a plausible claim. UM argues that "a claim for breach of contract must identify 'the actual terms of the contract allegedly breached.'" *Toca v. Tutco, LLC,* 430 F. Supp. 3d 1313, 1324 (S.D. Fla. 2020) (quoting *Herssein Law Grp. v. Reed Elsevier, Inc.,* 594 Fed. Appx. 606, 608 (11th Cir. 2015)). UM contends that Plaintiffs fail to identify any terms that would support their claim that they paid tuition in exchange for in-person classes. The Court disagrees.

It is well-settled in Florida that "the terms of the relationship between a student and a university may be found in university catalogs, student manuals, student handbooks, and other university policies and procedures." *Rosado v. Barry University Inc.,* 2020 WL 6438684, at *3 (S.D. Fla. Oct. 30, 2020) (denying motion to dismiss breach of contract for university's failure to provide in-person classes in response to COVID-19); *Salerno v. Fla. S. Coll.,* 2020 WL 5583522, at *4 (M.D. Fla. Sept. 16, 2020) (same); *Sirpal v. Univ. of Miami,* 684 F. Supp. 2d 1349, 1359 (S.D. Fla. 2010); *Jallali,* 992 So. 2d at 342 (student's relationship with university is based in contract arising from university's rules, regulations, regimen and publications at the time of enrollment).

Several federal courts in Florida – applying Florida law – have denied motions to dismiss breach of contract claims brought against colleges and universities following COVID-19 transitions to remote learning. *See Rosado*, 2020 WL 6438684; *Gibson v. Lynn Univ., Inc.,* 2020 WL 7024463 (S.D. Fla. Nov. 29, 2020); *Salerno*, 2020 WL 5583522; *Rhodes,* 2021 WL 140708, at *4. As in this case, the plaintiffs cited to portions of the universities' publications, policies, and course of conduct "to suggest courses would be conducted in-person and students would have access to campus facilities and activities." *Gibson*, 2020 WL 7024463, at * 3. These courts found that the plaintiffs met the burden under Florida law of pleading a breach of contract:

> Throughout the Amended Complaint, Plaintiff cites to portions of Lynn's publications and policies that suggest courses would be conducted in-person and students would have access to campus facilities and activities. . . . At this early stage of the case—given that Florida law recognizes that the university/student contract may be implied in the university's publications—these factual allegations are sufficient to plead the existence of a valid contract for in-person education.

*Id.* And, also:

> Rosado alleges that based on documents including the student handbook, university catalog, program publications, and course syllabi, and registration papers, which invoiced Rosado higher tuition corresponding to in-person classes rather than the lower tuition associated with Barry's online learning program—a contract promising in-person instruction was created. The Court agrees with Rosado that there is sufficient factual content alleged in the Amended Complaint to establish the existence of a valid contract with respect to in-person education.

*Rosado,* 2020 WL 6438684, at *3.  And from the Middle District of Florida:

> The crux of the College's motion is that the amended complaint does not identify a specific contractual provision that establishes that the College had an obligation to provide "in-person educational services" for the entire Spring 2020 semester. The Court disagrees based on its careful review of the amended complaint. Throughout the amended complaint, Murillo alleges that the College's publications clearly implied that courses would be conducted in-person. The College's materials also touted its many resources and facilities—all of which were located on the campus thereby implying in-person participation. These allegations are sufficient at this early stage, especially because Florida law recognizes that the college/student contract is typically implied in the College's publications. In other words, this is not a typical contract situation where there is an express document with delineated terms that a plaintiff can reference. It is more nebulous.

*Salerno,* 2020 WL 5583522, at *5.  The same analysis governs here.  Throughout the Complaint, Plaintiffs cite UM publications, web pages, catalogs, and policies that support Plaintiffs' claim of a contract for on-campus instruction and services.  (*See, e.g.,* DE [49], ¶¶ 25 – 55; 93 – 137).  The Complaint states a claim for breach of contract under Florida law.

UM argues that prior to registering for classes all students must sign and submit a Financial Responsibility Statement through which the students assume responsibility "to pay any and all tuition, fees and/or other miscellaneous charges" in exchange for registering for classes. (DE [52-1]).  UM notes that the Financial Responsibility Statement

does not distinguish between in-person or remote classes and, therefore, UM had no contractual duty to provide in-person instruction. Plaintiffs respond that the Financial Responsibility Statement is not a contract in that it does not address numerous material terms concerning the students' enrollment, including the cost and amount of tuition and fees owed. The Court agrees. The Financial Responsibility Statement may be relevant to the formation of the alleged contract between Plaintiffs and UM, but it is not the entirety of the parties' agreement. *See Jallali,* 992 So. 2d at 342 (student's relationship with university is based in contract arising from university's rules, regulations, regimen and publications at the time of enrollment).

Finally, UM argues that the claims for breach of implied contract and unjust enrichment must be dismissed because they are indistinguishable from the breach of contract claims. Plaintiffs correctly point out that Rule 8 permits pleading in the alternative. Fed. R. Civ. P. 8(d)(3) ("[a] party may state as many separate claims or defenses as it has, regardless of consistency"). This case is at the pleading stage; once a record has been developed, the parties will have the opportunity to address factual and legal issues raised by the pleadings. But at this stage, Plaintiffs are entitled to plead alternative theories of relief.

C. Jurisdictional Standing

UM moves to dismiss the claims brought by Plaintiffs Julie Gold ("Gold") and Michael Weiss ("Weiss") for lack of standing. Gold and Weiss are parents of UM students who paid their children's tuition and fees. Complaint, ¶ 21 (DE [49]).

A defendant may make a facial or a factual attack on standing. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008). "A facial

attack on the complaint requires the court to merely look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in his complaint are taken as true for purposes of the motion." *Id.* A factual attack uses materials extrinsic from the complaint, such as affidavits or testimony. *Id.* UM has made a facial attack on Gold's and Weiss' standing.

To establish standing, a plaintiff must show "(1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *L.M.P. on behalf of E.P. v. Sch. Bd. of Broward Cty., Fla.*, 879 F.3d 1274, 1281 (11th Cir. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "At the pleading stage, the plaintiff must clearly allege facts demonstrating each of these elements." *Gesten v. Burger King Corp.,* 2017 WL 4326101, at *1 (S.D. Fla. Sept. 27, 2017) (citing *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016)).

"Injury in fact is a constitutional requirement." *Spokeo, Inc.,* 136 S. Ct. at 1547–48 (quotations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc.,* 136 S. Ct. at 1548 (internal quotations and citations omitted). To be concrete, "the injury must be 'de facto'; that is, it must actually exist." *Id.* at 1549. "'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Id.* at 1549.

The Court agrees with UM that Gold and Weiss lack standing. The Complaint contains no allegations that they suffered an injury in fact. The contract alleged in the

11

Complaint was that the *students* would receive a residential, in-person educational experience at UM in exchange for payment of tuition and fees. Florida law recognizes a contract between the *student* and the university. *Jallali,* 992 So.2d 338. The Complaint alleges that UM breached the contract by failing to provide in-person education to the *students*. Although Gold and Weiss certainly have a parental interest in their children's education, the education – and the relationship with the university – belongs to the student, not to the parent. The Complaint fails to allege any legally protected contractual relationship between UM and Gold or Weiss. Likewise, the Complaint fails to allege any concrete injury to Gold or Weiss. *See Salerno,* 2020 WL 5583522, at *4 ("It is also of note that the lack of injury to Salerno [the mother] is clear regardless of whether Salerno provided financial support to her daughter. That arrangement was between mother and daughter. It does not establish a relationship between the College and Salerno under these facts.").

The Complaint fails to establish standing on the part of Gold or Weiss. The Court is, therefore, obligated to dismiss their claims for lack of jurisdiction. Fed. R. Civ. P. 12(b)(1); *Salerno*, 2020 WL 5583522, at *4 (parent who paid tuition lacked standing to sue for refund of tuition due to switch to remote learning in response to COVID-19).

III. <u>CONCLUSION</u>

The Court concludes that Plaintiffs have alleged plausible claims under Florida law for breach of contract and unjust enrichment.  Plaintiffs Gold and Weiss, however, lack standing to sue as they have failed to allege an injury in fact.  Their claims, therefore, will be dismissed.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that University of Miami's Motion to Dismiss Consolidated Class Action Complaint with Prejudice (DE [52]) is **GRANTED IN PART AND DENIED IN PART.**  The claims of Julie Gold and Michael Weiss are **DISMISSED** for lack of standing**.**   The Motion to Dismiss is otherwise denied.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 4th day of March 2021.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel via CM/ECF

13

# **EXHIBIT C**

*Holmes and Student B v. Univ. of Massachusetts*, Case No. 2084CV01025-B, Memorandum and Order (Mass. Super. Mar. 8, 2021)

11/30

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss                                                    Superior Court

SPENCER HOLMES AND STUDENT B,          )
    Plaintiffs                                        )
                                                     )
v.                                                           )        Case No. 2084CV01025B
                                                     )
UNIVERSITY OF MASSACHUSETTS,            )
    Defendant                                         )
                                                     )

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

    For the reasons set forth and supported in the accompanying Memorandum, the

University of Massachusetts, in accord with Mass. R. Civ. P. 12(b)(6), moves to dismiss

plaintiffs' amended complaint for failure to state a claim upon which relief may be granted.

Dated:        October 28, 2020                    UNIVERSITY OF MASSACHUSETTS
                                         By its attorneys,

*Following hearing, motion DENIED.*
*Please see Memo And Order*
*of this date.*
*[signature] Sackett, J.*
*3/8/2021*

                                                /s/ Peter Michelson
                                                Denise Barton, BBO#675245
                                                Deputy General Counsel
                                                Peter Michelson, BBO#546452
                                                Deputy General Counsel
                                                Maria Sheehy, BBO#560102
                                                Associate Counsel
                                                Mark A. Johnson, BBO#651271
                                                Associate Counsel
                                                University of Massachusetts
                                                Office of the General Counsel
                                                333 South Street, 4th Floor
                                                Shrewsbury, MA 01545
                                                Phone:  774-455-7300
                                                dbarton@umassp.edu
                                                pmichelson@umassp.edu
                                                msheehy@umassp.edu
                                                majohnson@umassp.edu

1



# COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss**

**SUPERIOR COURT**
**DOCKET NO. 2084CV01025-B**

## SPENCER HOLMES and STUDENT B,

### Plaintiffs,

### v.

## UNIVERSITY OF MASSACHUSETTS,

### Defendant.

## MEMORANDUM OF RULINGS AND ORDER ON DEFENDANT'S
## MOTION TO DISMISS AMENDED COMPLAINT (Paper 11)

This case is a putative class action against the University of Massachusetts (UMass) for

its retention of the full amount of tuition and fees collected from students for the spring semester

of 2020. In March, 2020, UMass ceased in-person teaching, transitioned to an on-line, remote

learning model, and closed all of its on-campus facilities in response to the COVID-19

pandemic, and an order of the Governor of Massachusetts. The first Complaint, in four counts,

was filed in May, 2020. Docket, Paper 1. The Amended Complaint filed in September, 2020 (in

response to a served, but not filed, motion to dismiss, pursuant to Superior Court Rule 9A),

contains the identical four counts, but has tripled in length.[1] Plaintiffs continue to seek

"disgorgement of fees and monies paid by students, and their parents, guardians, and families for

services not received." Amended Complaint, para. 5. Paper 8.

---

[1]    UMass finds significance in a clause contained in the first Complaint, but missing from the
Amended version, to wit: "While closing campus and transitioning to online classes was the right thing for
Defendant to do . . . ." Docket Paper 1, para. 2. The court finds more significance in the fact that 282 paragraphs of
the Amended Complaint do not make "a short and plain statement of the claim." Schaer v. Brandeis University, 432
Mass. 474, 477 (2000); Mass.R.Civ.P. 8(a).

The legal theories are quite simple: breach of contract and unjust enrichment. UMass has moved to dismiss the Amended Complaint on the grounds that the Plaintiffs do not possess a contractual right to in-person learning, and/or that the doctrine of frustration of purpose precludes a successful claim for breach of contract. Memorandum in Support, at pages 8-9. It further argues there cannot be a claim for unjust enrichment, because Plaintiffs possess a putative contract remedy, and because nothing about UMass' behavior in response to the pandemic may be considered "unjust" as a matter of law. Id., at pages 18-19.

Following hearing February 16, 2021, and review of all appropriate authority, the Motion is **<u>DENIED</u>** for the reasons outlined below.

### Factual Allegations Material to the Claims

In brief, the Plaintiffs allege they each paid to UMass tuition and certain fees, with the reasonable understanding, based on various communications, that they were paying for an on-campus learning experience, only to end up limited to a virtual, on-line experience entirely off-campus for the second half of the Spring 2020 semester -- allegedly a less valuable product which should result in refunds to them. The details are complicated by the fact that UMass has five campuses, one of which (the Medical School) does not enroll undergraduates, and by the fact that different fees are described, and in fact apply to, many different instruction-related and fee-related services. See, e.g., Amended Complaint, paras. 7, 95-224.

### Discussion

For reasons unclear, the parties' briefing is often lacking in Massachusetts appellate authority, despite the fact that Plaintiffs' case is brought on the basis of well-settled

Massachusetts common law.  Memorandum in Support, at pages 7-10, 13-16; Opposition, at pages 6-11, 13-16.[2]

The Contract Counts (I - tuition, and III - fees)

Massachusetts law requires that a viable complaint for breach of contract plausibly plead: the existence of a valid agreement between the parties supported by consideration; the plaintiff was ready, willing and able to perform; the defendant breached the contract; and the plaintiff suffered harm as a result.  Bulwer v. Mount Auburn Hospital, 473 Mass. 672, 690 (2016); Singarella v. City of Boston, 342 Mass. 385, 387 (1961); Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).  By the time of the hearing on the Motion, the parties each began to acknowledge that Massachusetts also recognizes quasi or implied contracts.  Salamon v. Terra, 394 Mass. 857, 859 (1985).

The parties also now seemingly agree that express or implied contracts between students and their academic institutions are interpreted by the standard of reasonable expectation.  Schaer v. Brandeis Univ., 432 Mass. 474, 478 (2000); MIT v. Guzman, 90 Mass. App. Ct. 1102 at 12-13 (2016)(Rule 1:28 decision)("the relationship . . . is essentially a contractual one," although "because the student-university relationship is unique, contract law need not be rigidly applied")(interior quotations omitted); Driscoll v. Trustees of Milton Academy, 70 Mass. App. Ct. 285, 293 (2007)("The Supreme Judicial Court established the standards for interpreting contract claims based on school handbooks in Schaer. . . . We therefore employ the standard of 'reasonable expectation --- what meaning the party making the manifestation, the [school], should reasonably expect the other party to give it.'").

---

[2]     This omission is only partially corrected by Plaintiffs' "Supplemental" filing of March 1, 2021, which I have since reviewed, which merely brings to the court's attention what other trial judges in Massachusetts have had to say about this type of case.  Paper 18.

As discussed at hearing, the particular terms of the parties' understanding(s) obviously matter. And it is the Plaintiffs' burden to identify preliminarily the source(s) of those understanding(s). The parties here appear to agree there is no one document that defines their relationship. With respect to their expectations in paying tuition, Plaintiffs point to the enrollment process which included reference to physical classroom locations, and their full access to campus for the first half of the spring semester. Amended Complaint, paras. 38-39, 121, 150, 184, 212. With respect to their expectations in paying various mandatory fees, Plaintiffs point to a variety of sources. Id., paras. 50-55, 66, 254-262.

In support of their contract claims generally, Plaintiffs argue that "the 56-page 282 paragraph Complaint is replete with quoted statements and promises from Defendant's various publications." Opposition, at page 11. Indeed it is. Unfortunately this plethora of information does not necessarily contribute to a clear statement of which terms might apply to which alleged understandings between the parties, be it with respect to tuition or to various fees. That said, it is clearly pleaded that "[p]laintiffs paid increased tuition and fees to enroll in the on-campus program." Id., paras. 38-46. It is not necessary or appropriate for purposes of the Motion before me at this time to determine precisely what collection of written documents or implied expectations might be viable. MIT, 90 Mass. App. Ct. at 13 ("the terms of the student-university relationship are informed by, inter alia, written policies."). Contrary to UMass' argument, my reading of our contract precedent is that an implied contract based on different facets of the parties' relationship would not be "making new law," or "wad[ing] into the question of how the University teaches its students." Memorandum in Support, at pages 16-17.[3]

---

[3]     I agree with the many courts who have considered this question, locally and farther afield, that the sorts of claims pleaded here are not claims for "educational malpractice."

4

Nor am I able to accept UMass's argument at this stage of the case that, "although . . . the University would like to return to teaching student on campus, there is no contractual right to on-campus learning . . . in the face of a global pandemic." Memorandum in Support at page 11. This argument conflates the issues.  I am persuaded by the allegations of the Amended Complaint, and our available authority, that a contractual right to on-campus learning may well have existed in March, 2020.  What becomes of that right or that understanding "in the face of a global pandemic" is a separate issue, not appropriately resolved pursuant to Mass.R.Civ.P. 12(b)(6).

UMass made a series of decisions about how to respond to the pandemic, while attempting to continue to provide an education to its students.  It states in its defense that "[t]he University shifted with great speed to providing classes remotely – a costly and logistically difficult venture.  Remarkably, students finished their course work during the spring semester, and seniors were able to graduate on time." Memorandum in Support, at page 1.  While UMass is to be acknowledged for those accomplishments, one might argue they were the baseline of its duty as a public institution, and do not make the University a pandemic hero, any more than Plaintiffs' allegations serve to make the University a villain.  More importantly, I must agree with the Plaintiffs that frustration of purpose is an affirmative defense to the breach of contract claim (Opposition, at pages 15-16), which cannot be determined at this stage of the pleading.[4]

**Accordingly, the contract claims (Count I with respect to tuition, and Count III with respect to fees) survive.[5]**

---

[4]     Chase Precast Corp. v. John J. Paonessa Co., Inc., 409 Mass. 371, 373-375 (1991); Mishara Constr. Co. v. Transit-Mixed Concrete Corp., 365 Mass. 122, 128-130 (1974).

[5]     While I agree that the "fee" claims are more muddled, I am not prepared at this time to dismiss claims for fees that "support" programs, as distinct from fees that provide facility access.  Nothing in the federal district court's two decisions in Chong v. Northeastern University, 2020-10844-RGS, provide me with a fair way to apply that analysis to these facts, without more on the topic.  As discussed at hearing, the technology fee, for example, will likely require limited discovery, to the extent the parties persist in their disparate factual claims.

5

The Unjust Enrichment Counts (II-tuition and IV-fees)

To state a claim for unjust enrichment a plaintiff must plausibly plead that:  s/he conferred a benefit on the defendant; the defendant accepted the benefit; and the defendant's retention of the benefit would be inequitable without payment for that value.  G4S Technology, LLC v. Massachusetts Technology Park Corp., 479 Mass. 721, 735 (2018)(purpose of quantum meruit doctrine and concept of unjust enrichment is to allow courts to produce a just result and to make the non-breaching party whole); Global Investors Agent Corp. v. National Fire Ins. Co., 76 Mass. App. Ct. 812, 826 (2010)(unjust enrichment requires more than benefit; the benefit must be unjust); Salamon v. Terra, 394 Mass. 857, 859 (1985)("The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party.").  This claim is based on "the retention of money or property of another against the fundamental principles of justice or equity and good conscience."  Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005)("it becomes necessary in any case where benefit of the doctrine is claimed to examine the circumstances and the conduct of the parties").

In brief, these Plaintiffs allege that UMass:  "saved significant sums of money [during the campus shutdown] in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, etc." (Opposition at page 17, and Amended Complaint paras. 246, 277); "received a significant bailout from the Federal Government under the CARES Act" (id., and Amended Complaint paras. 250, 281); and is supported by a multi-million dollar endowment while its students incur debt to pay the very fees and tuition Defendant seeks to retain." Id., and Amended Complaint paras. 249, 280.  Counsel

---

Memorandum in Support, at page 16 ("As concerns the technology fee, moreover, the transition to remote learning increased the costs related to the University's IT infrastructure, including personnel costs for IT professionals and increased need for software and hardware to permit the transition to remote learning to take place as relatively seamlessly as sit did.  University students got the full value of their technology fee this year.").

opines "[t]his is a textbook example of an unjust and inequitable arrangement." Opposition, at page 17. UMass responds that it is "cash-strapped," and that "plaintiffs and their attorneys . . . seek to profit off the difficult time that the University finds itself in." Memorandum in Support, at page 2. Neither of these rhetoric-laden positions carries persuasive weight.

UMass contends that this equitable theory of recovery depends on its having committed some unjust or otherwise wrongful acts. Memorandum in Support, at pages 18-19. Here again, however, Massachusetts law is clear that a determination of unjust enrichment is "a quality that turns on the reasonable expectations of the parties." Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 644 (2013). Plaintiffs allege that they reasonably expected to receive in-person instruction and access to on-campus facilities for the spring semester, and that UMass' decision not to make refunds -- even were there no breach of contract because COVID created a frustration of purpose -- was unreasonable.

It is of course true that a claim for unjust enrichment is not available when there is a legal remedy for breach of contract. CACH, LLC v. Yue Fang, 95 Mass. App. Ct. 1119 at n. 2 (2019)(Rule 1:28 decision), citing Santagate, 64 Mass. App. Ct. at 329 ("An equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law."). However, there are potentially multiple agreements or understandings, with varying terms, at issue here (for tuition, and for different types of fees), and UMass at this stage is denying altogether either the existence of any particular contract, or the enforceability of any such contract in the face of the pandemic. Plaintiffs are accordingly allowed to plead in the alternative, unless and until the question of the contract claims is resolved.

**Accordingly, the unjust enrichment claims (Count II with respect to tuition, and Count IV with respect to fees) survive.**

7

Nothing in these Rulings addresses the standing of particular Plaintiffs with respect to particular claims, or the merits of the class allegations, all of which are reserved for another day.

## Conclusion

Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Paper 11) is **DENIED.**

**SO ORDERED.**

Dated:  March 8, 2021

Christine M. Roach

8

**<u>EXHIBIT D</u>**

*Seslar, et al. v. Trs. of Purdue University*, Case No. 79D02-2005-PL-000059, Memorandum and Order (Ind. Super. Ct. Mar. 8, 2021)

STATE OF INDIANA ) IN THE TIPPECANOE SUPERIOR COURT 2

)

COUNTY OF TIPPECANOE ) CASE NO: 79D02-2005-PL-000059

ELIJAH SESLAR, ZACHARY CHURCH, JORDAN KLEBENOW ET AL

V.

THE TRUSTEES OF PURDUE UNIVERSITY, PURDUE UNIVERSITY

## **ORDER ON DEFENDANT'S MOTIONS TO DISMISS**

Plaintiff Elijah Seslar ("Seslar") filed a Class Action Complaint on behalf of himself and others against Defendant Trustees of Purdue University ("Purdue") on May 20, 2020 and an Amended Complaint on August 24, 2020. Plaintiffs Zachary Church, Jordan Kebenow and Luke McNally (collectively referred to as "Church Plaintiffs") filed their Class Action Complaint on behalf of themselves and others against Purdue on June 1, 2020. The parties agreed to consolidate their Complaints into this Cause of Action.

On December 1, 2020, this Court held a hearing on Purdue's Motions to Dismiss the Complaints. The Court, having considered the pleadings and authorities filed herein, argument of counsel presented at the hearing, and subsequent authorities filed by the parties, now issues its ruling below.

## I. **Background**

Seslar and the Church Plaintiffs are students of Purdue University. They bring their actions, individually and on behalf of other students, seeking partial refunds of tuition and other fees paid as a result of Purdue converting on-campus classes to remote e-learning in the middle of the 2020 Spring Semester. Purdue's actions were pursuant

to an Executive Order issued by the Governor of Indiana that halted in-person classroom operations because of the COVID-19 pandemic. Purdue claims the Complaints must be dismissed per Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted. The Court examines each Complaint separately.

## II. Legal Standards

A motion to dismiss under Indiana Trial Rule 12(B)(6) tests the legal sufficiency of the claim, not the facts supporting it. *City of East Chi., Ind. v. East Chi. Second Century, Inc.*, 908 N.E.2d 611, 617 (Ind. 2009) (*emphasis added*). Resolution of this issue does not entail going beyond an examination of the complaint at issue. *Stepanovich v. Houchin*, 126 N.E.3d 45 (Ind. Ct. App. 2019). For purposes of a 12(B)(6) Motion, trial courts should consider as true all the allegations of the complaint, and should view the motion in a light most favorable to the non-moving party, resolving all inferences in his favor. *William S. Deckelbaum Co. v. Equitable Life Assurance Soc'y*, 419 N.E.2d 228 (Ind. App. 1981), modified 422 N.E.2d 301, 1981 Ind. App. LEXIS 1386 (Ind. Ct. App. 1981). Motions to dismiss are not favored by law, and they are properly granted only when the allegations present no possible set of facts upon which the complainant can recover. *Id.* Although the plaintiff need not set out in precise detail the facts upon which the claim is based, he must still plead the operative facts necessary to set forth an actionable claim. *McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 890 (Ind. Ct. App. 2007). A court also need not accept as true conclusory, nonfactual assertions or legal conclusions. *Id.*

In Indiana, the relationship between a student and a university has been characterized as one of implied contract. *Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind.

Ct. App. 2013) citing *Neel v. Indiana University Board of Trustees*, 435 N.E.2d 607, 610 (Ind. Ct. App 1982). The terms of the contract, however, are rarely delineated, nor do the courts apply contract law rigidly. *Id.* The catalogues, bulletins, circulars, and regulations of a university made available to [a student] may become part of the contract. *Id.* quoting *Ross v. Creighton Univ.* 957 F.2d 410, 416 (7th Cir. 1992). A student must point to an identifiable contractual promise that a university failed to honor. *Ross,* 957 F.2d at 416.

The above principles have been applied to cases where a student is challenging the academic or educational judgment of a university. For example, in *Neel* a dental student claimed Indiana University breached a contract he had with the Dental School when the School dismissed him for academic insufficiency. In *Amaya*, a medical student challenged the school's decision to dismiss him for failure to maintain acceptable professional standards by cheating on an examination. However, the Court finds that the implied contract theory is equally applicable in this instance where students are seeking monetary damages for services they say they paid for but were not completely provided by Purdue. See *Park v. Ind. Univ. Sch. of Dentistry*, 781 F. Supp. 2d 783, 786, quoting *Ross*, 957 F.2d at 471 (The essence of a breach on contact claim "is not that the institution failed to perform adequately a promised educational service, but rather that it failed to perform the service *at all")*

An implied contract may be inferred from the conduct, situation, or material relations of the parties. See *Money Store Inv. Corp. v. Summers*, 909 N.E.2d 450, 459 (Ind. Ct. App. 2009).

### III.    Seslar's Complaint

According to Seslar's Complaint, Purdue is an institution of higher learning located in Indiana, with its main campus in West Lafayette, Indiana. *Seslar Amended Compl. ¶5.* It also operates other campuses throughout the state including cities such as Fort Wayne, Westville, South Bend, Indianapolis, and Vincennes.  *Id. ¶6.*  Seslar enrolled at Purdue's Fort Wayne Campus. *Id. ¶ 15.*  Purdue "offers both in-person, hands-on programs, and fully online distance-learning programs, which it prices as separate distinct products." *Id. ¶23.*  Purdue markets the in-person and online programs separately throughout its website and other publications, circulars, and academic catalogs. Id. *¶¶ 67-70.*  When students enroll in the on-campus program, Purdue promised to provide benefits above basic academic instruction including but not limited to:  "face-to-face interaction with professors, mentors, peers"; "access to facilities such as computer labs, study rooms, laboratories, and libraries;" "student unions"; "extra-curricular activities;" and "hands-on learning." *Id. ¶ 24.*

Purdue's publications regarding in-person classes are "full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratio, campus diversity; campus location; and the like." *Id. ¶ 71.* Purdue markets the "on-campus experience as a major benefit to enrollment." Id. *¶ 72.* One of Purdue's websites states, "finding a home on campus is an important part of college life ... you'll find your footing, make campus your own and establish lifelong friendships." *Id.* Another website states Purdue Fort Wayne offers a

traditional campus experience for students with "well-equipped classrooms, impressive research labs, first-rate student housing, and inviting gathering spaces." *Id.*

When students accept an offer to attend Purdue, they are "flooded" with communications from the school extolling the virtues of the on-campus experience. *Id. ¶ 77.* They receive academic catalogs and course listings on a website that specifically delineates on-line classes from in-person programs. *Id. ¶ 82.* In-person classes are listed not only by description, but also by meeting time and physical classroom location. *Id. ¶ 83.*

Seslar and others did not seek an on-line degree, but instead chose the on-campus program offerings and enrolled on that basis. *Id. ¶24.* He paid tuition for the Spring 2020 semester. *Id. ¶ 20.* In addition to tuition, enrolled students are required to pay certain mandatory fees. These fees included but are not limited to: a Technology Fee that "supports the usage and maintenance of equipment in the student computer labs and classrooms"; a Student and Wellness Fee to cover "operational expenses of the recreational sports fitness facility"; and a Student Activity fee that "provides funding for student events and initiatives". *Id. ¶¶ 29-34.*

From January 13, 2020 through March 15, 2020, Seslar and other students attended physical classroom instruction provided by Purdue and had access to the full campus. *Id. ¶¶ 87, 89.* But as a result of the COVID-19 pandemic, Purdue announced that across all campuses, the University was moving all classes online for the remainder of the semester, beginning March 23, 2020. *Id. ¶ 40.* Purdue urged students who had already left campus for Spring Break not to return; and students who were still on campus to go back to their permanent homes. Most non-essential campus, student and

recreational facilities were closed but some restricted access to campus continued. *Id. ¶¶ 41, 44*. Purdue has not offered any pro-rated discounts or refunds of tuition or mandatory fees. *Id. ¶¶44-45*. Purdue also announced it would conduct the 2020 summer courses remotely and certain mandatory fees would be waived. *Id. ¶ 46*.

Seslar's Complaint includes two putative class actions: the "Tuition Class" (consisting of all people who paid tuition and enrolled in classes for the Spring 2020 semester who were denied live in-person instruction) and the "Fee Class" (consisting of all people who paid fees of students enrolled in classes for the Spring 2020 semester). *Id. ¶48*. The Complaint includes four claims: (1) Breach of Contract for the Tuition Class; (2) Unjust Enrichment for the Tuition Class; (3) Breach of Contract for the Fees Class; and (4) Unjust Enrichment for the Fees Class.

**A.     *Breach of Contract*.**  The elements of a breach of contract claim are (1) the existence of a contract (2) the defendant's breach, and (3) damages to the plaintiff. *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993).

Here, Seslar alleges that he and other students of the Tuition Class entered into contracts, which required Purdue to provide live in-person classroom instruction in exchange for tuition paid by the students. *Compl. ¶62*. The terms of the contract are implied through various sources, including websites and marketing materials. *Compl. ¶63*. Those materials touted the benefits of on campus living including well-equipped classrooms, impressive research labs, student housing, and inviting gathering spaces. Purdue also provides two separate programs and pricing structures for in-person and online instruction. *Compl. ¶¶ 81-82*. Academic catalogs delineate in-person classes and list meeting times and physical classroom locations. *Compl. ¶83*. Seslar also relies upon

the conduct of the parties wherein Purdue provided in-person learning for the first half of the 2020 Spring Semester. *Id. ¶ 87.* Members of the Tuition Class accepted the offer for in-person education by paying tuition and attending classes during the Spring 2020 semester. *Id. ¶90.* Purdue breached the contract by moving all the classes to online distance learning and eliminating the on-campus experience without reducing funds or refunding tuition. *Id. ¶94.* The Complaint seeks damages amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access, which they received. *Id. ¶ 101.*

Regarding the Fee Class, Seslar alleged mandatory fees that were assessed against every enrolled student. Those fees covered the cost of maintenance of equipment in student computer labs and classrooms, operational expenses of the recreational sports fitness facility, and funded student events and initiatives. Id. *¶¶ 123-*126. He claims he and others paid these mandatory fees and in accepting the payments, a contract was formed which required Purdue to make these services, programs, or benefits available. *Id. ¶128.* He claims Purdue breached this contract when it moved to online learning, constructively evicting the students from campus, closing most campus buildings and facilities and cancelling most student activities. *Id. ¶ 131.* He further claims the Fee Class has been deprived of the value of the services, programs, and benefits and is entitled to damages to include disgorgement of the pro-rata amount of fees that were collected but for which services were not provided. *Id. ¶135.*

Viewing the allegations in the complaint as most favorable for Seslar at this stage of the case, and considering them within the context of an implied contract between the students and Purdue, the Court finds Seslar has plead enough operative facts necessary

to set forth an actionable claim for the Tuition Class and Fees Class to survive a Rule 12(b)(6) motion to dismiss. Whether these allegations can withstand scrutiny in subsequent proceedings regarding the existence or enforceability of an implied contract for in-person learning is an issue left for another day.

Purdue argues that the Governor's Executive Order made providing in-person instruction impossible. *Def. Memorandum in Support of Motion to Dismiss, pp. 18, 20*. Impossibility is an affirmative defense to performance of an executory contract and is generally invoked as a defense to an action for damages. *Wagler v. W. Boggs Sewer Dist.*, 980 N.E.2d 363, 378 (Ind. Ct. App. 2012) (omitting internal citations). Impossibility has been defined as "where the performance of a contract becomes impossible, non-performance is excused, and no damages can be recovered." *Id.* To invoke impossibility, one must demonstrate that performance is "not merely difficult or relatively impossible, but absolutely impossible, owing to the act of God, the act of the law, or the loss or destruction of the subject-matter of the contract." *Id.*

Impossibility is  not one of the enumerated defenses that may be made by a T.R. (12)(B) motion.  It may be more appropriately asserted in a responsive pleading or by means of a motion for summary judgment.  See *Mattingly v. Whelden*, 435 N.E.2d 61, 64 (Ind. Ct. App. 1982).

Purdue also directs this Court to cases from other jurisdictions where courts dismissed similar claims because the contract between the students and their universities did not provide for in-person instruction. However, many of those cases addressed Summary Judgment motions.  The standard for Summary Judgment is whether the evidentiary matters demonstrated no genuine issue as to any material fact

such that the moving party was entitled to a judgment as a matter of law. *Ind. T.R. 56.* Those courts also considered documents submitted outside the pleadings, such as tuition invoices statements and student handbooks. The rulings were not based upon a T.R. 12(B)(6) standard as is required here.

     **B.**   ***Unjust Enrichment.*** There are three general types of contracts-- express, implied and constructive. *Ahuja v. Lynco Ltd. Med. Research*, 675 N.E.2d 704, 709 (Ind. Ct. App. 1996), *trans. denied.* Express and implied contracts are very similar. *Id.* They differ only in that an express contract is evidenced by spoken or written words while an implied contract is evidenced by the conduct of the parties. *Id.* The final type of contract, a constructive contract, is also known as a quasi-contract or a contract implied at law. *City of Indianapolis v. Twin Lakes*, 568 N.E.2d 1073, 1078 (Ind. Ct. App. 1991), *reh'g denied, trans. denied.* It is a legal fiction used to refer to a situation where no contract exists "but where justice nevertheless warrants a recovery under the circumstances as though there had been a promise." *Id.* The issues of unjust enrichment and conferring a benefit arise in the context of a constructive contract *Ahuja*, 675 N.E.2d at 709. Unjust enrichment operates when there is no governing contract. *DiMizio v. Romo*, 756 N.E.2d 1018, 1024-25 (Ind. Ct. App. 2001)

     Here, Seslar claims Unjust Enrichment as an alternate theory of recovery for the Tuition and Fee Classes. *Amend. Compl. ¶¶ 105, 138.* He claims he and other members paid substantial tuition for "live in-person instruction in physical classrooms on a physical campus with all attendant benefits." *Id. ¶ 106.* By doing so, they conferred a benefit on Purdue. *Id. ¶ 107.* However, they did not receive the full benefit of their bargain. *Id. ¶ 109.* Purdue has saved significant sums of money by moving classes on-

line. *Id. ¶ 112.* Thus, Seslar claims that equity and good conscience require Purdue to return a portion of the monies paid in tuition. *Id. ¶ 106.* Similarly, Seslar's claims he and others paid "substantial student fees for on-campus benefits, access and services and did not receive the full benefit of the bargain." *Id. ¶ 140.* Purdue retained these fees and has "failed to provide the services, benefits and/or programs." *Id. ¶ 143.* Thus, equity and good conscience require Purdue return a "pro rata portion of the monies paid in fees". *Id. ¶ 146.*

As stated above, unjust enrichment operates only where there is no governing contract. A Plaintiff cannot recover under both theories of breach of contract and unjust enrichment. However, Indiana Trial Rules provide that a pleading may state as many separate claims or defenses as the pleader has regardless of the consistency and whether based on legal or equitable grounds. *Ind. T.R. 8(E)(2).* The Court declines to dismiss the unjust enrichment claims at this stage of the proceedings, as they have been adequately pled as an alternative theory of recovery.

## IV.    Church Plaintiffs' Complaint

According to the Complaint, the Church Plaintiffs were enrolled at Purdue's campus located in West Lafayette, IN. Unlike Seslar above, these students lived in on-campus housing. *Church Compl. ¶¶ 10-15, 17-21, 23-27.* They were charged tuition for live in-person instruction in brick and mortar classrooms. *Id. ¶49.* They paid tuition and contracted for in-person instruction. *Id. ¶51.* In March, 2020, Purdue announced that all Spring 2020 classes would be moved to online learning platforms. *Id. ¶38.* The value (and cost) of online classes is less than in-classroom instruction, with labs, seminars and office hours. *Id. ¶48.* By way of example, costs for a Bachelor of Science

Degree in Accounting or Business Administration for out-of-state residents through Purdue's online facility (Purdue Global) is approximately $66,780.00, compared to the same degree for in-person instruction (excluding housing, meals, and ancillary expenses) which is approximately $115,000.00.  *Id. ¶¶ 50-51*.

Students also pay fees in order to use campus facilities, including but not limited to "school-specific costs, parking fees, gym/health club membership fees, and any other fees charged by Purdue with respect to obtaining an in-person education."  *Id. ¶28*.  The Plaintiffs paid these fees.  *Id. ¶¶* 11, 15, 21, 27.  Moreover, the following programs include additional fees:  computer science ($2,050.00); data science ($2,050.00); engineering ($2,050.00); management ($1,436.00), Purdue Polytechnic ($572.00), and honors college ($200.00). *Id. 51*.

At the beginning of the semester Church Plaintiffs agreed to a contract that governs the terms of their on-campus housing.  *Id. ¶11, Church Compl. Ex. "A"*.  In addition to tuition, fees, and housing costs, students were charged for on-campus meals and credits to their "Dining Dollar" accounts.  *Id. ¶¶ 20, 26, 58*.  Pursuant to Purdue's March, 2020 announcement, students who could leave campus residence halls were directed to do so and only students with extenuating circumstances were permitted to remain in on-campus housing.  *Id. ¶ 38*.  Further, most campus buildings would soon remain locked and all subsequent student activities would be canceled.  *Id*.   Food options on campus would be continued on a limited basis.  *Id*. 38. Students were informed that they would receive a $750 credit to their student accounts as long as they moved out of residence halls by a set date.  *Id. ¶ 53*.

This Complaint is divided into four categories: (1) the Tuition Class; (2) the Housing Class; (3) the Fee Class; and (4) the Meals Class. *Id. ¶ 62.* The Tuition Class claims Purdue breached its contract to provide live in-person instruction by moving classes to online distance learning and refusing to reduce outstanding charges or refund tuition costs paid. *Id. ¶75.*

The Housing Class claims it entered into contracts that provided students would pay fees for residence hall housing and, in exchange, Purdue would provide housing. *Id. ¶ 81.* Plaintiffs paid the amounts due, but Purdue did not provide housing for the entire semester. *Id. ¶ 82.* They have been damaged in that they have been deprived of the value they paid for residence housing and meals. *Id. ¶ 85.*

The Fees Class claims students entered into contracts with Purdue (the contracts are in the University's possession), which provided they would pay various fees, and, in exchange, Purdue would provide services to the students. *Id. ¶ 88.* Purdue has refused to reduce outstanding charges and has retained the monies paid by the students, without providing them the benefit of their bargain. *Id. ¶ 89.* The students have been damaged  by being deprived of the value of the services the fees they paid were intended to cover. *Id. ¶ 90.*

The Meals Class claims students entered into contracts that they would pay fees for access to on-campus dining service and Purdue would provide food service to those students. *Id. ¶ 109.* Purdue breached this contract when it moved classes online, closed most University buildings, and stopped providing the food service for which these fees were intended to pay. *Id. ¶ 110.* The students have been damaged by being deprived of

the value of the services the fees they paid for meals were intended to cover, while Purdue retained these fees. *Id. ¶ 112.*

The Church Plaintiffs seek a reduction in outstanding charges and a partial refund of: (a) tuition representing the difference in the value of a half-semester of live in-person instruction versus the value of half semester of online distance learning; (b) the unused portion of housing costs proportionate to the amount of time that remained in the Spring 2020 semester; (c) the unused portion of each meal contract and Dining Dollars account, and (d) prorated share of fees. *Id. ¶ 41*

They have also brought Four (4) Counts of Unjust Enrichment relating to the Tuition, Fees, Housing, and Meals Classes. These Counts claim that Purdue has retained fees paid by the students without providing the services for which the fees were paid and, as such, has been enriched. *Id. ¶¶ 95, 99, 105, 117*

A.    Breach of Contract. The Court incorporates the legal authorities cited above, which includes that Indiana law provides that the relationship between a student and a university is one of implied contract. The terms of the contract, however, are rarely delineated. For their Tuition Claim, the Church Plaintiffs assert that they paid tuition for the 2020 Spring Semester and contracted for attendance at Purdue for "in-person instruction." They do not cite any express representations made by Purdue for this proposition. Unlike the Seslar Complaint above, they do not cite to any representations made in Purdue's marketing materials that implied in-person instruction. They also do not rely on past conduct of the parties as did Seslar – who stated Purdue actually provided in-person instruction for the first part of the semester. However, like Seslar, the Church Plaintiffs assert that they paid a significantly higher

price for in-person instruction on campus compared to Purdue's published costs for online distance learning through Purdue Global.  Whether this is sufficient to establish an implied contract for in-person learning remains to be seen after further development of the evidence.  But the Court is satisfied that the allegations are enough to place Purdue on notice of the claim of breach of contract.  Again, a Trial Rule 12 (B)(6) claim tests the legal sufficiency of the claim, not the facts supporting it.

Regarding the Housing and Meal Claim, the Church Plaintiffs refer to an express on-campus housing contract, rather than an implied contract.  The contract and stated terms can be found in their Exhibit "A" attached to the Complaint.  It stated that Purdue agreed to provide housing and a meal plan to the student for the 2019-2020 Academic Year, with the exception of certain vacations, such as Thanksgiving and Spring Break or "in the event of an emergency as declared by the University."  It allows Purdue to reassign a Student's housing "in the event of a national or regional emergency."  It provided that participation in a meal plan is a condition of the housing agreement, except for students assigned to certain residence halls, and stated the student could choose from various meal plans.  The agreement allows Purdue to cancel the agreement if the student violated any rule of the contract or other regulations of the University. Whether Purdue had a right to breach or cancel this contract under the circumstances of the Governor's Executive Order remains to be seen, as is the issue of damages, if any, if such a cancellation or breach was justified.  Regardless, the Court is satisfied that the Church Plaintiffs have adequately stated a claim upon which relief can be granted and have placed Purdue on sufficient notice of this claim.

The Fees Claim refers to items such as parking, gym/health club membership, and any "other fees charged by Purdue with respect to obtaining an in-person education." *Id. ¶ 28*. With all inferences leading in favor of the non-moving party, the Court infers this claim is based upon an implied contract for Purdue to provide certain services related to on-campus living. Thus, this claim is sufficient to withstand the Motion to Dismiss. Further evidence is needed to shed light on the specific campus related fees and how plaintiffs were deprived of such services. But the claim also refers to fees for specific programs such as: computer science; data science; engineering; management; Purdue Polytechnic; and honors college. The Church Plaintiffs fail to state how switching classes to online remote learning deprived them of services related to these program-specific fees. Therefore, this part of the Fees Claim must be dismissed.

B.    Unjust Enrichment. Like Seslar above, the Church Plaintiffs claim Purdue has been unjustly enriched by keeping payments made for tuition and fees without providing the services for which the fees were paid. As stated above, Indiana Trial Rule 8(E)(2) allows plaintiffs to plead in the alternative. Therefore, a Motion to Dismiss these claims is not proper at this stage of the proceedings. However, it appears to the Court that the Housing and Meals Claim is governed by an express contract. Since unjust enrichment is not available where there is an express contract, this part of the Church Unjust Enrichment Claim must be dismissed.

## IV.    SUMMARY

Defendant Purdue University's Motion to Dismiss Seslar's Class Action Complaint for Claims for Breach of Contract and Unjust Enrichment regarding the Tuition Class and Fees Class is DENIED.

Defendant Purdue University's Motion to Dismiss The Church Plaintiffs' Class Action Complaint, Counts I, Breach of Contract for the Tuition Class is DENIED. The Motion to Dismiss Count III, Breach of Contract for the Fees Class is GRANTED in part since the Court finds the portion this claim relating to program-specific fees (computer science; data science; engineering; management; Purdue Polytechnic; and honors college) fails to state a claim upon which relief may be granted. The Motion to Dismiss Counts II and VII, Breach of Contract for the Housing and Meals Class is DENIED. The Motion to Dismiss Counts IV and VI, Unjust Enrichment claims for the Tuition and Fees Class is DENIED. The Motion to Dismiss Counts V and VIII, the Unjust Enrichment Claim for the Housing and Meals Class is GRANTED, finding that these claims are subject to an express contract, which prevents recovery under the theory of unjust enrichment.

So ordered on this the 8th day of March, 2021, aey

Steven P. Meyer, Judge
Tippecanoe Superior Court 2

Distribution:   Jacob Ross Cox
1606 N Delaware ST
Indianapolis IN 46202

Emily Allison Kile-Maxwell
Faegre Drinker Biddle & Reath LLP
300 N Meridian Street
Ste 2500
Indianapolis IN 46204

Jane Ann Dall Wilson
Faegre Drinker Biddle & Reath LLP
300 North Meridian Street Suite 2500

Indianapolis IN  46204

Roy T Willey
32 Ann Street
Charleston SC  29403

Eric M Poulin
32 Ann Street
Charleston SC  29403

Vess Allen Miller
One Indiana Square
Suite 1400
Indianapolis IN  46204

Richard Edward Shevitz
COHEN & MALAD
One Indiana Square
Suite 1400
Indianapolis IN  46204