# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK SHAFFER, MARGARET MAULDIN, CHARAFEDDINE ZAITOUN, and MARK LESSIN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE GEORGE WASHINGTON UNIVERSITY and THE BOARD OF TRUSTEES OF GEORGE WASHINGTON UNIVERSITY, <br><br> Defendants. | Civil Case No. 20-1145 (RJL) |

## MEMORANDUM OPINION

(March 21, 2021) [Dkt. # 18]

Plaintiffs, current students and parents of current students enrolled in undergraduate and graduate programs at The George Washington University, filed this consolidated purported class action complaint against defendants The George Washington University and The Board of Trustees of George Washington University ("GW" or "defendants") on July 15, 2020. This case is one of many across the country challenging universities' responses to the COVID-19 pandemic. Plaintiffs assert claims for breach of express and implied contracts, unjust enrichment, and conversion, claiming that GW acted unlawfully when it failed to provide on-campus classes and facilities following the outbreak of the COVID-19 pandemic.

1

On August 12, 2020, defendants moved to dismiss the action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Upon consideration of the pleadings, the relevant law, and for the reasons stated below, defendants' motion to dismiss is GRANTED, and this case is DISMISSED.

## BACKGROUND

GW is a private institution of higher learning located in Washington, D.C. Compl. ¶ 23. Prior to the COVID-19 pandemic, GW offered few online courses and programs. *Id.* ¶ 38. However, on March 10, 2020, in response to the emerging COVID-19 pandemic, GW announced that beginning on March 23, in-person classes would temporarily shift to remote instruction to protect the health and well-being of students, faculty, and staff, and to ensure continuity of instruction for all enrolled students. Defendants' Motion to Dismiss (hereinafter "Defs.' Mot.") at 3. Remote learning continued for the remainder of the Spring 2020 semester. *Id.* Most students were required to vacate residence halls, classes transitioned online, and university facilities were closed. *Id.* at 3-4. GW offered students prorated refunds of housing, dining, and parking fees, *id.* at 4, but otherwise declined to refund tuition and other fees. Compl. ¶ 2.

Plaintiffs contend that this denial amounted to a breach of express and implied contracts, unjust enrichment, and conversion on the part of GW. Compl. ¶¶ 104-140. They bring these claims on behalf of a purported class of similarly situated persons, including all

who paid GW tuition, fees, and/or room and board for "on-campus" programs, but who were denied use of and/or access to in-person instruction and/or campus facilities. *Id.* ¶ 91.

## LEGAL STANDARDS AND ANALYSIS

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when the complaint allegations allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the standard does not amount to a "probability requirement," it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678.

In resolving a Rule 12(b)(6) motion, the Court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor[.]" *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). In addition to the complaint's factual allegations, the Court may consider "documents attached to or incorporated in the complaint, matters of which courts may take judicial notice, and documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim." *Harris v.*

*Amalgamated Transit Union Local 689*, 825 F.Supp.2d 82, 85 (D.D.C. 2011).

## A. Breach of Contract and Breach of Implied Contract Claims

Plaintiffs brought breach of contract claims against GW, alleging that its decision to transition from in-person to online education breached its express and implied contracts with students. Defendants moved to dismiss, arguing that plaintiffs failed to plead an enforceable contractual obligation; that plaintiffs failed to allege any breach of the terms of GW's contract with its students; and that D.C. law counsels against judicial intervention in discretionary educational decisions. *See generally* Compl.

Under D.C. law, "[t]o prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Brown v. Sessions*, 774 F.3d 1016, 1024 (D.C. Cir. 2014) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). The alleged obligation that underlies the claim "must be so definite in its terms . . . that the promises and performances to be rendered by each party are reasonably certain." *Basch v. George Washington Univ.*, 370 A.2d 1364, 1367 (D.C. 1977). Moreover, a plaintiff must plausibly allege a university's intent to be bound by a particular statement creating such an obligation. *Id.*; *Shinabargar v. Bd. Of Trustees of Univ. of Dist. Of Columbia*, 164 F.Supp.3d 1, 29 (D.D.C. 2016). Language that merely "expresse[s] an expectancy" fails to satisfy these standards. *Basch*, 370 A.2d at 1368. Plaintiffs' contractual claims fail because they have not alleged any facts showing that GW breached a contractual obligation, nor any

4

intent to be bound by the generalized statements in their university documents.

Plaintiffs claim that they contracted, and paid tuition for, on-campus university experiences that included benefits impossible to replicate online. They contend that this promise appears throughout university documents, including online publications, GW's Bulletin, and the bills sent to students. *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss (hereinafter "Pls.' Opp.") at 12. By moving online, they argue, GW failed to meet their obligation to provide students with the benefits they contracted for, including in-person interaction with peers, mentors, professors, and guest speakers; access to technology, libraries, and laboratories; opportunities to attend or participate in spectator sports and athletic programs; access to student government and health services; participation in extracurricular groups; and other opportunities. *Id.* at 6-7.

Unfortunately for plaintiffs, no plausible reading of the university materials gives rise to an enforceable contractual promise for in-person instruction. Plaintiffs point to broad descriptions of GW's campus and common student experiences, as well as customary practice. Compl. ¶¶ 45-48. Plaintiffs also point to the differences between GW's in-person and online degree programs. *See* Pls.' Opp. at 12-13. But these general descriptions and distinctions do not create enforceable obligations on the part of GW. The mere presence of certain language in a university bulletin "is not enough to support a finding that the language amounted to a contractual obligation." *Basch*, 370 A.2d at 1366-67. GW's university documents certainly reference on-campus experiences and distinguish between on-campus

and online instruction, but nowhere do plaintiffs identify language sufficiently "definite in its terms" amounting to a *promise* for in-person instruction. *Id.* at 1367. Materials touting the vitality of the campus experience certainly create an expectancy for on-campus education, but do not definitively promise such.

Moreover, plaintiffs do not identify any language or other evidence, in these university documents or elsewhere, indicating GW's intent to be bound to provide in-person instruction. In fact, the Bulletin expressly provides that GW "reserves the right to change courses, programs, fees, and the academic calendar, or to make other changes deemed necessary or desirable, giving advance notice of change when possible," and that "[t]he University reserves the right to make changes in programs without notice *whenever circumstances warrant such changes.*" Defs.' Mot. at 12 (emphasis added). For these reasons, plaintiffs' contract claims must be DISMISSED.

## B. Unjust Enrichment Claim

Where a contract exists, an unjust enrichment claim generally is not appropriate because it requires a court to "displace the terms of that contract and impose some other duties not chosen by the parties." *Emerine v. Yancey*, 680 A.2d 1380, 1384 (D.C. 1996) (internal citation omitted); *see also Harrington v. Trotman*, 983 A.2d 342, 346 (D.C. 2009) ("[T]here can be no claim for unjust enrichment when an express contract exists between the parties.") (internal citation omitted). D.C. courts consider "promissory estoppel and unjust enrichment as remedies for failed agreements," and "tend not to allow either action to proceed in the

6

presence of an actual contract between the parties." *Vila v. Inter-Am. Inv., Corp.*, 570 F.3d 274, 279 (D.C. Cir. 2009); *see also Plesha*, 725 F. Supp. 2d at 112 (quoting *Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C. Cir. 1973) ) ("There is, of course, no need to resort to [a quasi-contract] when the evidence sustains the existence of a true contract, either express or implied in fact."). It thus follows that the claim for unjust enrichment against GW should also be DISMISSED.

## C. Conversion Claim

Similarly to their unjust enrichment claim, plaintiffs' conversion claim is insufficiently distinct from their contract claims to survive. Plaintiffs' conversion claim turns on the contention that GW may not retain funds paid to it in exchange for certain unperformed services where a contract exist between the parties. As defendants rightly note, that is a contract claim, and not a claim for conversion. *See Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 n. 13 (D.C. 2008) ("Failure by a contracting party to pay the contract price of debt . . . is not a conversion but merely breach of contract"). As such, it also follows that the claim for conversion against GW should also be DISMISSED.

## CONCLUSION

For the foregoing reasons, GW's motion to dismiss is hereby **GRANTED**, and this case is **DISMISSED**. A separate order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge