IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAAZ QURESHI, MATTHEW RABINOWITZ, and DANISH ARIF, individually and on behalf of others similarly situated,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>AMERICAN UNIVERSITY,<br><br>   *Defendant*. | Case Nos. 20-cv-1141 (CRC),<br>      20-cv-1454 (CRC),<br>      20-cv-1555 (CRC) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S RENEWED PARTIAL MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

In this case, Plaintiffs seek refund of the tuition and fees they paid for their Spring 2020 semesters as students at American University, when the University transitioned to remote instruction partway through the semester in response to the COVID-19 pandemic. This Court previously dismissed Plaintiffs' Complaint in its entirety. Dkt. 53. On appeal, the D.C. Circuit affirmed in part, reversed in part, and remanded. *See Shaffer v. George Washington University*, 27 F.4th 754 (D.C. 2022). As relevant here, the D.C. Circuit "reverse[d] the District Court's dismissal of the [D.C. Consumer Protection Procedures Act] claim and remand[ed] for the trial court to reconsider American's motion to dismiss the CPPA claim in light of our analysis of Plaintiffs' breach-of-contract claims." *Id.* at 770. The court explained that "the District Court on remand may be required to consider American's alternative argument that the University is not subject to the CPPA, a theory the District Court declined to reach." *Id.* In line with this guidance, American now renews its motion to dismiss exclusively for the purpose of seeking dismissal of Plaintiffs' CPPA claim. American is filing its Answer to the Amended Complaint

1

concurrently with this motion, and by doing so does not waive any arguments presented herein. *See* Fed. R. Civ. P. 12(b).

Plaintiffs filed their Consolidated Class Action Complaint on August 28, 2020, Dkt. 26, and American moved to dismiss that complaint on September 30, 2020, Dkt. 27. On May 7, 2021, this Court granted American's Motion to Dismiss in its entirety. Dkt. 52. Plaintiffs appealed, and on March 8, 2022, the D.C. Circuit affirmed in part, reversed in part, and remanded. 27 F.4th at 760. The Court affirmed dismissal of express contract and conversion claims, but allowed implied contract and unjust enrichment claims relating to tuition and certain fees to proceed. *Id.* The Court also reversed dismissal of Plaintiffs' CPPA claim, since the "District Court's analysis and rejection of Plaintiffs' CPPA claim rested on its conclusion that Plaintiffs failed to allege that the University was bound by any implied-in-fact agreements." *Id.* at 770. The Court explained that, on remand, this Court "may be required to consider American's alternative argument that the University is not subject to the CPPA." *Id.* The D.C. Circuit mandate issued on May 9, 2022. Dkt. 56.

Plaintiffs' claim under the CPPA should be dismissed for two reasons. First, the CPPA does not apply to the claims raised against American in this case. And second, even assuming Plaintiff have plausibly alleged implied-in-fact agreements, as set forth in *Shaffer*, Plaintiffs have still not actually alleged that American engaged in an unfair or deceptive trade practice.

First, the text and legislative history of the CPPA show that it does not apply here. D.C. Code § 28-3905(k) explicitly says that actions thereunder may not be brought "against a nonprofit organization … based on membership in such organization, membership services, [or] training or credentialing activities." *Id.* § 28-3905(k)(5). American is a non-profit under the statute. *Id.* § 28-3901(a)(14); *see also, e.g.*, *Burka v. Aetna Life Ins. Co.*, 87 F.3d 478, 479 (D.C.

2

Cir. 1996); *American Univ. in Dubai v. District of Columbia Educ. Licensure Comm'n*, 930 A.2d 200, 202 n.3 (D.C. 2007). Claims about the method of instruction—instruction leading to course credit and, eventually, university degrees—pertain to "training or credentialing activities." *See* D.C. Code § 28-3905(k)(5). Plaintiffs' claims concerning ancillary aspects of student status at American—for instance, access to campus facilities and participation in student events—similarly qualify as "membership services." Plaintiffs' claims thus fall within the CPPA's statutory bar of certain claims against nonprofits. *See Sanoian v. George Washington Univ.*, No. 18-CV-911, slip op. at 5 (D.C. Mar. 3, 2020) (addressing lower court ruling that CPPA was inapplicable because "a 'law degree is a training and credentialing activity,'" declining to address "difficult question[]" of whether provision of financial aid qualifies as "training and credentialing activity," and affirming on alternate ground).

This reading of the statute is confirmed by the legislative history of D.C.'s Nonprofit Organizations Oversight Improvement Amendment of 2007. In response to D.C. courts finding that a previous iteration of the CPPA exempted nonprofits from the statute's scope, *see Snowder v. District of Columbia*, 949 A.2d 590, 599-600 (D.C. 2008) (citing *Save Immaculata/Dunblane, Inc. v. Immaculata Prep. Sch., Inc.*, 514 A.2d 1152, 1159 (D.C. 1986)), the D.C. City Council introduced a bill (No. 16-759) that would amend the CPPA to subject all nonprofits to the statute, with no exceptions. *See* D.C. City Council, Comm. on Public Safety & the Judiciary, Comm. Rept. on Bill No. 17-53, at 18-19 (Feb. 28, 2007) (Section 4 of Bill No. 16-759 amending CPPA's definition of "merchant" to include entities "whether organized or operating for profit or for a nonprofit purpose"). At a hearing on the bill, a representative of the Consortium of Universities of the Washington Metropolitan Area expressed "concerns regarding the potential impact of the legislation and how it would be administered." *Id.* at 4. The bill was later

amended (No. 17-53) to include the exceptions reflected in the final version of the statute. *Id.* at 78. Testifying at a hearing on the later bill, the president and CEO of the Consortium thanked the chair of the City Council committee for "work[ing] with [the Consortium's] staff" on the bill and said that the updated language was "far better than the first version," particularly with respect to "the parameters of the Consumer Protection statute exemption." *Id.* at 45. Thus, in drafting the CPPA and the exception for "training and credentialing activities," the D.C. City Council worked directly with universities to respond to their concerns about the scope of the statute—demonstrating that university activities are exactly what this exception was meant to capture.

In previous briefing on this issue, Plaintiffs contended that their CPPA claim challenged not the University's instruction itself, but instead its alleged "misrepresentations and material omissions" about that instruction. These are two sides of the same coin. This Court cannot evaluate whether a misrepresentation or omission was made without evaluating the instruction that was offered, such that any such claim would still be "based on … training or credentialing activities." D.C. Code § 28-3905(k)(5). Plaintiffs also argued that the nonprofit exception "applies only to a 'transaction … not arising from the purchase or sale of consumer goods or services in the ordinary course of business,'" Dkt. 28 at 31, but this is belied by the plain text of the statute. The language they quote is the last item in a disjunctive list constructed using the word "or," D.C. Code § 28-3905(k)(5); it thus operates independently from the specifically enumerated exception for "training or credentialing activities." *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise[.]").

4

Regardless, Plaintiffs could not show that the instruction provided by American is a consumer good or service that falls within the scope of the statute. D.C. Code §§ 28-3901(a)(2), 28-3904(a), 28-3905(k)(1)(A). The statute defines consumer goods and services as ones bought "for personal, household, or family purposes," *id.* § 28-3901(a)(2)(B)(i), and this excludes "transactions intended primarily to promote business or professional interests," *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010). Courts interpreting similar statutes in other states have held that because students pursued their degrees with an eye toward future employment rather than "for dilettantish reasons" or "with no intention of using it to make money," their payment for educational services was for business or professional reasons and thus was not a cognizable consumer transaction. *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 661-662 (6th Cir. 2013) (Michigan law). The same principle serves to place Plaintiffs' claims outside the scope of the CPPA.

Second, Plaintiffs have not alleged an unfair or deceptive practice. The crux of their claim is that American's purported representation that they "would receive in-person educational services, experiences, and opportunities" either misrepresented or failed to state the true nature or quality of the remote instruction provided during the pandemic. Compl. ¶ 202. American disputes that it made any such representation. But even if such representations were made, Plaintiffs fail to allege any facts supporting the assertion that these representations were misleading or false at the time they were made. There are no allegations in the Complaint even suggesting that American foresaw a global pandemic resulting in government orders demanding changes to the method of instruction. Plaintiffs thus fault American for omitting to mention an unforeseen circumstance that existed outside its control. But this Court should not deem American to have made misleading statements about its educational services where any

5

discrepancy between those statements and the services American provided to Plaintiffs during the latter part of the Spring 2020 semester arose only because of an unforeseeable pandemic and ensuing government mandates—not because of anything intrinsic to American's representations themselves.

## CONCLUSION

American asks this Court to dismiss Count VI of the Consolidated Class Action Complaint with prejudice.

Dated: May 23, 2022

Respectfully submitted,

*/s/ Alan Schoenfeld*
Alan E. Schoenfeld (#1725277)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 937-7294
alan.schoenfeld@wilmerhale.com

Bruce M. Berman (#333948)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: (202) 663-6006
bruce.berman@wilmerhale.com

*Attorneys for Defendant American University*