**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MAAZ QURESHI, MATTHEW RABINOWITZ, DANISH ARIF et al., individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>AMERICAN UNIVERSITY,<br>　　　　　　　　　Defendant. | No. 1:20-CV-01141-CRC<br><br>**FAIRNESS HEARING:**<br>**May 7, 2024 at 2 p.m.** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ..................................................................................................................6

FACTUAL AND PROCEDURAL BACKGROUND.............................................................6

LEGAL STANDARD.............................................................................................................9

ARGUMENT…………………………………………………………………..............10

    I.     Certification of the Proposed Settlement Class Is Appropriate……..………...............10

        A. Rule 23(a) Requirements Are Satisfied………………………………...........11
            1.  Rule 23(a)(1) - "Numerosity"………………………………….................12
            2.  Rule 23(a)(2) - "Commonality"…………………………………..............12
            3.  Rule 23(a)(3) - "Typicality"…………………………………….............13
            4.  Rule 23(a)(4) – "Adequacy"……………………….……..…............14

        B. The Settlement Class Satisfies the Rule 23(b) Requirements....................................15

            1.  Common Issues Predominate Over Any Individual Issues………..................15
            2.  A Class Action is the Superior Method …………………………….............16

    II.    The Settlement Is Fair, Reasonable, And Adequate…………………………...............17

        A.  The Settlement Is The Result Of Arms-Length Negotiations……................17
        B.  The Amount of the Settlement in Relation to the Strength
            of Plaintiffs' Claims……………………………………………..............18
        C.  The Status of the Litigation at the Time of the Settlement………..................20
        D.  Reaction of the Settlement Class………………………………….................21
        E.  Opinions of Experienced Counsel……..……………………………...........22
        F.  Procedural Fairness Is Satisfied………………………………..…...............23
        G.  The Relief Provided To The Settlement Class Is Adequate Under The Rule
            23(e)(2)(C) Factors………………………………………………..............24
      C.  The Costs, Risks, and Delay of Trial and Appeal ……………………...............26
      D.  The Proposed Method of Distributing Funds to the Settlement Class is Effective,
        Fair, and Adequate …………………………………………………..............27
      E.  Attorneys' Fees and Expenses are Reasonable…………………………..............29
      F.  The Parties Have No Additional Agreements to be Disclosed Under Rule
        23(e)(3)…………………………………………………….......................29

III.    The Settlement Treats Settlement Class Members Equally……………….......................33

IV.    The Class Administration Costs Should Be Paid……………….....................................30

V.      Attorneys' Fees And Incentive Awards ……………………………………............31

        A.      Plaintiffs' Request for Attorney's Fees is Reasonable…………...............31

        B.      Plaintiffs' Request for Service Awards is Reasonable…….…...............31

CONCLUSION…………………………………………………………………. ............32

**TABLE OF AUTHORITIES**

**Cases:**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...................................................................8,9,13

*Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937 (C.D. Cal. Aug. 2, 2022)...................................17

*Bynum v. District of Columbia*, 214 F.R.D. 27 (D.D.C. 2003)..............................................................10

*Choi et al v. Brown University*, Case No. 1:20-cv-00191-JJM-LDA (D.R.I. Sept. 6, 2022)...................................................................................................................................8

*Cohen v. Chilcott*, 522 F. Supp. 2d 105 (D.D.C. 2007)..............................................................9,10,11,13

*Equal Rights Ctr. v. Wash. Metro. Area Transit*, 573 F.Supp.2d 205 (D.D.C.2008)..................................16

*Evans v. Brigham Young Univ.*, No. 1:20-CV-100-TS, 2022 WL 596862 (D. Utah Feb. 28, 2022)..................................................................................................................................24

*Greenberg v. Colvin*, No. 13-1837 (RMC), 2015 WL 4078042 (D.D.C. 2015).....................................7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).......................................................................8

*In re Chicken Antitrust Litig.*, 669 F.2d 228 (5th Cir.1982) ...............................................................25

*In re Columbia Univ. Tuition and Fee Action*, Case No. 1:20-cv-03208 (S.D.N.Y. Mar. 29, 2022)..................................................................................................................................8

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.* 55 F.3d 768 (3d Cir. 1995))..................................................................................................................................8

*In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12 (D.D.C. 2001)...................................................................................................10,15,18,19,25,26,28

*In re Pepperdine Univ. Tuition & Fees COVID-19 Refund Litig.*, 659 F. Supp. 3d 1086 (C.D. Cal. March 7, 2023)...............................................................................................................17,21

*In re Telik, Inc. Secs. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................25

*In re Vitamins Antitrust Litigation*, 209 F.R.D. 251 (D.D.C. 2002)..............................................10,11,13,15

*Kinard v. East Capitol Family Rental, L.P.*, 331 F.R.D. 206 (D.D.C. 2019)........................................14

*Martin v. Lindenwood Univ.*, No. 4:20-cv-01128-RLW, (E.D. Mo. May 11, 2022)..............................27

*Metzner v. Quinnipiac Univ.*, No. 3:20-cv-00784-KAD (D. Conn.)........................................................25

*Nat'l Ass'n of Reg'l Med. Programs, Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976).....................12

*New York v. Reebok Int'l. Ltd.*, 903 F. Supp. 532 (S.D.N.Y. 1995)................................................20

*Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298 (D.D.C. 1996)..........................................................7,8

*Razmyar v. Bombay Club, Inc.*, 2016 U.S. Dist. LEXIS 106465 (D.D.C. June 13, 2016).............................28

*Ressler v. Jacobson*, 822 F.Supp. 1551 (M.D. Fla.1992)...............................................................18

*Rosado v. Barry Univ.*, Inc., No. 1:20-cv-21813-JEM (S.D. Fla. Aug. 7, 2021)....................................27

*Rynasko v. New York Univ.*, 63 F.4th 186 (2nd Cir. 2023)............................................................17

*Stephens v. US Airways Group, Inc.*, 102 F. Supp. 3d 222 (D.D.C. 2015)..............................................7

*Sweedish Hosp. Corp. v. Shalala*, 1 F.3d. 1261 (D.C. Cir. 1993)...................................................26,28

*Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998)..............................................................7

*Trombley v. Nat'l City Bank*, 826 F. Supp. 2d. 179, 194 (D. D.C. 2011)..........................................15,16,19

*Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir.1997)....................................12

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 362 (D.D.C. 2007)....................24

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S., 349-50 (2011)..........................................................10,13

*Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 210 (D.N.H. 2021).......................................8,9,27

**Publications:**

*Newberg on Class Actions* § 11:27 (4th ed. 2002).....................................................................8

*Manual for Complex Litig.*, § 30.42..................................................................................15

**Rules:**

Fed. R. Civ. P. 23(a) ............................................................................................8,9,10,11,12

Fed. R. Civ. P. 23(b) ..........................................................................................8,9,10,11,12,13,14

Fed. R. Civ. P. 23(e).............................................................................................7,15,23,27

**INTRODUCTION**

On January 10, 2024, this Court preliminarily approved the class action settlement (the "Settlement") between Plaintiffs Maaz Qureshi, Matthew Rabinowitz, and Danish Arif (collectively, "Plaintiffs" or "Class Representatives"),[1] and Defendant American University ("American") and directed that notice be sent to the Settlement Class Members (Dkt. 93). The Settlement Administrator has now implemented the Court-approved notice plan and the reaction from the class has been overwhelmingly positive. To date, no Settlement Class Members have objected to the settlement and only one has asked to be excluded. The Settlement – negotiated and resolved through established counsel with the assistance of Hon. Suzanne Segal (Ret.) – is an excellent result for the class and the Court should grant final approval. The Settlement's strength speaks for itself: it creates a $5.439 million non-reversionary common fund from which Settlement Class Members will automatically receive a *pro rata* cash award.

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval[2]. Plaintiffs respectfully submit an agreed-upon order approving the Settlement, as detailed herein as **Exhibit 1**, attached to the Declaration of Paul Doolittle, Esq..

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 1, 2020, Plaintiff Maaz Qureshi filed the initial complaint against American

---

[1] All capitalized terms herein have the same meaning of those set forth in the Parties' Settlement Agreement and Release.

[2] On March 13, 2024, Plaintiffs also moved for attorney's fees, costs, expenses, and service awards for the Class Representatives. *See* Dkt. 94 et seq. Plaintiffs have relied and referenced materials already filed with the Court in Docket 94 to avoid duplication of arguments and factual statements.

University in this Court. ECF No. 1 in No. 1:20-cv-01141-CRC. Plaintiff Danish Arif next filed his complaint against American University on May 4, 2020. ECF No. 1 in No. 1:20-cv-1555-CRC. Lastly, Plaintiff Matthew Rabinowitz filed his complaint against American University on June 2, 2020. ECF No. 1 in No. 1:20-cv-01454-CRC. On July 3, 2020, the Court granted American's motion to consolidate the three related cases on the Qureshi docket. Thereafter, Plaintiffs filed a Consolidated Class Action Complaint ("CAC") on August 28, 2020. ECF No. 26. In the CAC, Plaintiffs alleged six causes of action against American: (i) Breach of Contract for Tuition; (ii) Unjust Enrichment for Tuition (iii) Breach of Contract for Fees; (iv) Unjust Enrichment for Fees; (v) Conversion; and (vi) Unlawful and Deceptive Trade Practices in violation of the CPPA. ECF No. 26 ¶¶ 76 – 211. Plaintiffs brought these causes of action "as a result of Defendant's decision not to issue appropriate refunds for the Spring 2020 semester after canceling in-person classes and changing all classes to an online/remote format, closing most campus buildings, and requiring all students who could leave campus to do so as a result of the" COVID-19 pandemic. *Id*., at ¶ 1. Plaintiffs alleged that "[a]s a precondition for enrollment, Plaintiffs were required to and did pay substantial tuition [and fees] for the Spring 2020 semester either out of pocket of by utilizing student loan financing" to "enroll in the on-campus program." *Id*., at ¶ 20; 27.

Furthermore, Plaintiffs alleged that American "priced the tuition and mandatory fees based on the in person educational services, opportunities and experiences it was providing" for on-campus and in-person education. *Id*., at ¶ 28. Thus, by paying tuition and fees, students expected to receive the on-campus and in-person educational instruction and services that American promised to provide. *Id*., at ¶ 30. However, "as a result of the COVID-19 pandemic, Defendant announced major changes to this schedule in an announcement from the University's

President on March 10, 2020. The University announced that Spring break would be extended for 2 days through March 16 and 17, and that classes would resume on March 18, 2020 in a fully online format." *Id.*, at 46. Thus, Plaintiffs alleged that "Plaintiffs and members of the proposed Classes were deprived of the full benefits and experiences of on-campus enrollment" for which they paid for. *Id.*, at 51.

On September 30, 2020, American filed a motion to dismiss (ECF No. 27); which Plaintiffs opposed on October 14, 2020 (ECF No. 28). After hearing oral argument on American's Motion to Dismiss, the Court issued an order granting the Motion to Dismiss. ECF Nos. 52 - 53. On June 4, 2021, Plaintiff Qureshi timely filed a notice of appeal to the U.S. Court of Appeals for the District of Columbia Circuit. ECF No. 54. After Plaintiff Qureshi fully briefed and argued before the D.C. Circuit Court, on March 8, 2020, the D.C. Circuit affirmed in part and reversed in part, remanding the case for further proceedings in accordance with the court's opinion. On remand, American filed a Renewed Motion to Dismiss and an Answer to the CAC. ECF Nos. 57-58. While American's Renewed Motion to Dismiss was pending, the Parties began engaging in extensive discovery, including but not limited to exchanging written discovery, conducting oral discovery of the named Plaintiffs, and three corporate designees of American under Fed. R. Civ. P. 30(b)(6). On March 7, 2023, the Court denied American's Partial Renewed Motion to Dismiss. ECF No. 76.

While discovery was ongoing, Plaintiffs filed their Motion for Class Certification on April 17, 2023. ECF No. 78. Plaintiffs sought certification two classes, defined as: (1) Tuition Class: "All undergraduate students enrolled in classes at American University during the Spring 2020 semester who paid tuition"; and (2) Fees Class: "All undergraduate students enrolled in classes at American University during the Spring 2020 semester who paid fees." ECF No. 78.

Prior to the deadline for American to respond to Plaintiffs' Motion for Class Certification, the Parties agreed to participate in a private mediation with Hon. Suzanne H. Segal (Ret.) of Signature Resolution.

On July 11, 2023, the Parties participated in a full-day mediation with Judge Segal (Ret.). While unable to reach an agreement on the day of the mediation, Judge Segal remained engaged with both Parties over the course of the following month, including numerous communications regarding proposals and discussions on various risks, strengths, and weaknesses. After continued negotiations, the Parties ultimately reached an agreement on a class action settlement. The Parties then executed a term sheet encompassing the material terms of a class action settlement on October 5, 2023, and then entered the Settlement Agreement after continued negotiations on various terms and conditions —including with the aid of Judge Segal. At all times throughout the litigation, American has denied and continues to deny any wrongdoing whatsoever and continues to deny that it committed, or threatened or attempted to commit, any wrongful act or violation of law or duty alleged in the CAC. Both Plaintiffs and American respectfully believe that it would have prevailed at class certification, summary judgment, and/or trial.

Nonetheless, taking into account the uncertainty and risks inherent in any litigation and the desire to avoid the expenditure of further legal fees and costs, the Parties concluded it was desirable and beneficial that this action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in the Settlement Agreement. The Settlement terms resolve all of the Settlement Class's tuition and fee claims. Finally, thereafter, the Class Representatives filed their unopposed Motion for Preliminary Approval of the Settlement, Dkt. 91, which the Court granted on January 10, 2024. Dkt. 93.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 23(e), in order to grant final approval of a settlement, the Court must find that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998); *see also Greenberg v. Colvin*, No. 13-1837 (RMC), 2015 WL 4078042, at *3 (D.D.C. July 1, 2015); Fed. R. Civ. P. 23(e)(2). In this Circuit, there is no single test for evaluating a proposed settlement under Rule 23(e). *Stephens v. US Airways Group, Inc.*, 102 F. Supp. 3d 222, 226 (D.D.C. 2015). "District courts consider the facts and circumstances of the case, and examine the following factors: (a) whether the settlement is the result of arms-length negotiations; (b) the terms of the settlement in relation to the strength of plaintiffs' case; (c) the stage of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel." *Id*. (quotations and citation omitted).

In analyzing these factors, the Court's role is a limited one as it is well-established that courts assume a limited role when reviewing a proposed class action settlement. *Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996) (citations and quotations omitted). Courts favor the resolution of disputes through voluntary compromise, and, therefore, strongly encourage settlements. *Id*. In the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits. Absent evidence of fraud or collusion, such settlements are not to be trifled with. *Id*.

## **ARGUMENT**

### I.    **Certification of the Proposed Settlement Class Is Appropriate**

The Court may certify a class for settlement purposes. Certifying a class for settlement purposes satisfies the Rule 23 requirements more easily than a contested motion for class

certification. The Court should determine, for settlement purposes only, that the proposed Settlement Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Newberg on Class Actions* § 11:27 (4th ed. 2002) (citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.* ("In re GMC"), 55 F.3d 768 (3d Cir. 1995)), and certify the settlement class, appoint Poulin | Willey | Anastopoulo, LLC; Bursor & Fisher, P.A.; and Leeds Brown, P.C. as Class Counsel, and Plaintiffs Maaz Qureshi, Danish Arif, and Matthew Rabinowitz as the Class Representatives.

Importantly, courts across the country have granted certification when evaluating settlement of analogous claims. *See In re Columbia Univ. Tuition and Fee Action*, Case No. 1:20-cv-03208, Dkt. No. 115 at 3 (JMF) (S.D.N.Y. Mar. 29, 2022) (final judgment certifying the proposed class for settlement purposes); *Choi et al v. Brown University*, Case No. 1:20-cv-00191-JJM-LDA, Dkt. No. 78 at 2 (D.R.I. Sept. 6, 2022) (preliminarily approving the proposed settlement and conditionally certifying the proposed class); *Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 210 (D.N.H. 2021) (granting preliminary approval of the parties' proposed class action settlement and preliminarily certifying the proposed class for settlement purposes).

To certify a class, a plaintiff must meet all the requirements under Fed. R. Civ. P. 23(a), otherwise known as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, as well as the requirements of either Fed. R. Civ. P. 23(b)(1), (2), or (3). *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).

### A. Rule 23(a) Requirements Are Satisfied

"Settlement-only class certification nevertheless obligates a Court to consider whether the

proposed class meets the requirements of Federal Rule of Civil Procedure 23, although the Court need not determine whether the case, if tried, would present management problems." *Cohen v. Chilcott*, 522 F. Supp. 2d. 105, 113 (D.D.C. 2007) (citing *Amchem*, 521 U.S., at 620). Thus, Plaintiffs must show that the proposed Settlement Class meets all four requirements of Fed. R. Civ. P. 23, which "are referred to as numerosity, commonality, typicality, and adequacy of representation. In addition, Plaintiffs must demonstrate that the class is maintainable under Rule 23(b)." *Id.* Here, Plaintiffs clearly satisfy all elements of Fed. R. Civ. P. 23.

### 1. Rule 23(a)(1) - "Numerosity"

The Settlement Class is sufficiently numerous. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23. "Courts in this District have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members." *Cohen*, 522 F. Supp. 2d., at 114 (internal citations omitted). Here, numerosity is satisfied because the Settlement Class contains over 7,000 American University students. Therefore, numerosity is satisfied.

### 2. Rule 23(a)(2) - "Commonality"

The Settlement Class satisfies the commonality requirement. Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S., 349-50 (2011). "The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. 12, 26 (D.D.C. 2001). However, "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33

(D.D.C. 2003)(internal citations omitted).

Here, Plaintiffs easily satisfy the commonality. Common issues include (1) whether American and Settlement Class Members had a contract; (2) whether that contract obligated American to provide Settlement Class Members in-person educational instruction; (3) whether the contract obligated American to provide Settlement Class Members with access to campus facilities and in-person resources; (4) whether American breached the contract; (5) whether American unlawfully kept funds paid by Settlement Class Members; (6) whether American was unjustly enriched by keeping the funds paid; and (7) the fact and measure of damages derived from verifiable class wide information maintained by American. These common questions, which target the same alleged misconduct by American, satisfy Rule 23(a)(2).

### 3. Rule 23(a)(3) - "Typicality"

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23. "The typicality requirement aims at ensuring 'that the class representatives have suffered injuries in the same general fashion as absent class members.'" *Cohen*, 522 F. Supp. 2d., at 115 (citing *In re Vitamins Antitrust Litigation,* 209 F.R.D. 251, 260 (D.D.C. 2002)).  "The typicality requirement is satisfied 'if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability.'" *Cohen*, 522 F. Supp. 2d., at 115 (internal citations omitted).

Here, Plaintiffs' claims and those of the Settlement Class arise from the same course of events and they all would make similar legal arguments to prove American's alleged liability. Plaintiffs and every member of the Settlement Class were enrolled in at least one in-person class at American during the Spring 2020 Semester, were transitioned to remote classes and were

unable to access on-campus services and facilities when American closed its campus in Spring 2020 in response to the Covid-19 pandemic. The Settlement Class Members would also all make similar legal arguments to those that the Plaintiffs have made to prove American's alleged liability. Specifically, all Settlement Class Members would argue that American students who paid tuition and/or fees for the Spring 2020 semester had a contract with American that entitled them to in-person educational instruction and services, and that, by switching to remote education and closing on-campus services in response to the pandemic without reducing or refunding tuition or fees, American was liable for breach of contract or, alternatively, was unjustly enriched by retaining those payments. Therefore, the Settlement Class satisfies the typicality requirement.

### 4. Rule 23(a)(4) – "Adequacy"

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. In this District, there are "[t]wo criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia,* 117 F.3d 571, 575 (D.C. Cir.1997) (citing *Nat'l Ass'n of Reg'l Med. Programs, Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976)).

Here, there is no evidence that Plaintiffs' interests are antagonistic to Settlement Class Members' interests. Furthermore, Plaintiffs have demonstrated their adequacy and commitment to vigorously prosecuting this Action by performing their duties as named plaintiffs: Class Representatives have been in regular communication with Class Counsel about the progress of

this case, reviewed documents filed on their behalf in order to remain updated on the status of this case, they have searched for and collected documents relevant to this action, they have sat for depositions when asked to do so, and considered the reasonableness of the proposed settlement on behalf of themselves and the proposed Settlement Class.

Likewise, Proposed Class Counsel Poulin | Willey | Anastopoulo, LLC, Bursor & Fisher, P.A., and Leeds Brown, P.C. have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. *See* Dkt. 94-2, 94-3, and 94-4; *see also* Dkt. 91-8, 91-9 and 91-10.

Class Counsel regularly engages in major complex class action litigation, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country, including in analogous cases. *See* Dkt. 91-8, 91-9, and 91-10 (Firm Resumes of Poulin | Willey | Anastopoulo, LLC; Bursor & Fisher, P.A.; and Leeds Brown, P.C.).

### B.  The Settlement Class Satisfies the Rule 23(b) Requirements

Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other available methods of fairly and efficiently adjudicating the controversy. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 594, 623 (1997). "There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *Cohen*, 522 F. Supp. 2d, at 116 (internal citations omitted).

### 1. Common Issues Predominate Over Any Individual Issues

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Here, American engaged in a common course of conduct applicable to all Settlement Class Members when it transitioned all in-person classes to online classes. Moreover, the central legal issues presented by this case would predominate over individualized issues and injury can be proven on a classwide basis without conducting individualized inquiries. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869, 725 F.3d 244, 252–53 (D.C. Cir. 2013). For example, all Settlement Class Members would have to address the same core issues of 1) whether a contract existed with American for in-person educational instruction and service; 2) if such contract did exist, whether American breached the alleged contract with Plaintiffs and Settlement Class Members when American transitioned to remote educational instruction and closed on-campus services in response to the COVID-19 pandemic during the Spring 2020 semester; and 3) whether there was any difference in value between online distance learning and live in-person instruction. These material issues would be resolved using class-wide proof for the Settlement Class Members and these and other common issues to the class are more substantial than those issues requiring individualized proof.

### 2. A Class Action is the Superior Method

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). "The superiority requirement of Rule 23(b) is met when a court determines that a class action is superior to other available means of adjudication." *In Re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 270 (D.D.C. 2002).

16

"The superiority requirement ensures that resolution by class action will 'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences." *Kinard v. East Capitol Family Rental, L.P.*, 331 F.R.D. 206, 215 (D.D.C. 2019) (internal citations omitted).

Here, in light of the common legal and factual questions at issue for all Settlement Class Members and the relatively small amount of damages compared to the enormous investment of time and money that it will take to litigate them, individual Settlement Class Members have a very limited interest in individually controlling the prosecution of this Action and would gain little benefit from initiating separate actions. Individual lawsuits would also needlessly waste judicial resources as each lawsuit would likely involve the same evidence concerning the common issues central to this case. Class certification will permit approximately 8,000 students to adjudicate their common claims in a single forum simultaneously, effectively, and efficiently without any duplication of effort. Thus, proceeding as a class action is the superior method to fairly and efficiently resolving Proposed Settlement Class Members' claims.

## II.    The Settlement Is Fair, Reasonable, And Adequate

When reviewing whether a class action settlement "is fair, reasonable, and adequate, courts in this Circuit have examined the following factors: (a) whether the settlement is the result of arms-length negotiations; (b) the terms of the settlement in relation to the strength of the case; (c) the stage of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel." *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d. 179, 194 (D. D.C. 2011) (citing *In re Lorazepam,* 205 F.R.D. at 375; *In re Vitamins Antitrust Litig.,* 305 F. Supp. 2d 100, 104 (D.D.C. 2004)). As set forth below, this Settlement is procedurally and

substantively fair, adequate, and reasonable. Therefore, all factors and Rule 23(e) weigh in favor of preliminary approval of the proposed Settlement.

### A.    The Settlement Is The Result Of Arms-Length Negotiations.

"A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.'" *In Re Vitamins Antitrust Litig.*, MDL 1285, 2001 WL 856290, at *2 (D.D.C. July 19, 2001) (citing *Manual for Complex Litig.*, at § 30.42). This Settlement is the result of arm's length negotiations conducted by counsel with experience in similar COVID tuition and fee refund actions, including with the aid of Judge Segal (Ret.). *See* Dkt 91-1, ¶¶ 4, 6-7. In fact, between July 11, 2023 (the day of the full-day mediation) and the ultimate execution of the agreement on October 25, 2023, the Parties extensively negotiated various terms to finalize this agreement. *See* Dkt. 94-2 ¶¶ 19-21, 28. Defendant's Counsel likewise has litigated numerous complex class actions on behalf of schools and universities in this District. *See* Dkt. 94-2 ¶ 31. The Parties vigorously litigated the case for several years, took up the Court's decision on the motion to dismiss to the D.C. Circuit Court of Appeals, conducted extensive merits discovery, consulted with experts and participated in an extended round of mediation with the assistance of an experienced mediator. *See* Dkt. 92-1, ¶¶ 9-17 (detailing the procedural history of this action prior to mediation with Judge Segal (Ret.)). Judge Segal's participation in the Settlement ensured that the Parties' negotiations were conducted at an arm's length and without collusion.

### B.  The Amount of the Settlement in Relation to the Strength of Plaintiffs' Claims.

"The Court must evaluate the relief provided in the proposed settlement against the relative strength of plaintiffs' case, including their ability to obtain recovery at trial." *Trombley*,

826 F.Supp.2d. at 194 (citing *Equal Rights Ctr. v. Wash. Metro. Area Transit,* 573 F.Supp.2d 205, 211 (D.D.C.2008)). Although each Party believes that they have a strong case, neither side is without risk.

The terms of the Settlement are favorable to the Settlement Class Members in relation to the strength of their case. *See* Dkt No. 91-1 at 7-9. The recovery here is in line with those in other similar class actions nationwide. *See* FN4. The terms of the Settlement provide damages for all qualifying Settlement Class Members – without them having to do anything to claim those monies. Moreover, the Settlement Agreement also provides that American agrees to not oppose this motion to provide an equal distribution of the Settlement Fund to Settlement Class Members covered by this Settlement Agreement. In full, Settlement of this case was extremely difficult given the new posture of these cases nationwide and the impact of the novel Covid-19 pandemic that gave rise to these claims. In fact, Class Counsel is not aware of any case that has gone to trial or that has made a determination on the proper method of calculating damages (especially in light of the impossibility defense). While numerous courts around the country have consider the issues in the context of summary judgment, class certification, and/or motions to dismiss, the case law is uncertain as to the precise measure of damages had this matter be put before an ultimate trier of fact – under either a contract or quasi-contract theory. *See e.g., Rynasko v. New York Univ.*, 63 F.4th 186, 199 (2nd Cir. 2023) (under New York law, "While the presence of a price differential between courses offered online versus in-person classes may be highly relevant for showing damages, we cannot conclude that a differential between in-person and online classes is necessary condition for plausibly alleging an implied contract for in-person courses and services."); *In re Pepperdine Univ. Tuition & Fees COVID-19 Refund Litig.*, 659 F. Supp. 3d 1086, 1095 (C.D. Cal. March 7, 2023) (in denying summary judgment in part under California

law, "Moreover, Plaintiffs have proffered portions of an expert report that purports to calculation Plaintiffs' damages by determining the objective value of an in-person education relative to an online-only education … which creates a triable issue as to Pepperdine's contention that calculation of restitution would necessarily require an assessment of the quality of the education provided to the Plaintiffs specifically. This argument does not bar Plaintiffs' quasi-contract claim."); *Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 947-48 (C.D. Cal. Aug. 2, 2022) (in granting summary judgment for the student class on liability under California law, determining that issues of fact exist as to damages and holding, "An appropriate damages calculation takes into account tuition offsets for the calculation of in-person and online tuition costs. Plaintiff's expert appropriate accounts for these costs."). Thus, while Plaintiffs believe they would have succeeded in establishing damages here at trial, they cannot say with certainty that they would do so without risk.

Here, the Settlement Fund to be disseminated to Settlement Class Members is $5.439 million and Class Counsel expects Settlement Class Members to receive several hundred dollars each. Further, the Settlement will provide Settlement Class Members the opportunity to choose the method of payment, via an Election Form, including through check, or modern payment methods such as Venmo or PayPal. Notably, all Settlement Class Members will receive a payment unless they opt out.

Therefore, it is proposed Class Counsel's considered opinion that Settlement on the proposed terms at this juncture in the Action, given all the risks involved, is the most prudent course. Thus, this factor supports final approval.

### C.  The Status of the Litigation at the Time of the Settlement.

"Courts…consider whether counsel had sufficient information, through adequate

discovery, to reasonably assess the risks of litigation vis-á-vis the probability of success and range of recovery." *In Re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 377 (D.D.C. 2002) (citing *Ressler v. Jacobson,* 822 F.Supp. 1551, 1554–55 (M.D. Fla.1992)). This case was litigated extensively – as to the scope of the pleadings, through discovery, and through the briefing of class certification. *See* Dkt. 94-2, ¶¶ 4-18. Here, Counsel for the Parties had copious information about the case after engaging in extensive written, oral, and electronic discovery. *See* Dkt. 91-2, ¶ 17; Dkt. 94-2, ¶ 15. Since filing CAC, proposed Class Counsel has fully briefed an opposition to motion dismiss, briefed and argued before the D.C. Circuit Court of Appeals, conducted discovery, reviewed documents produced by American, took 30(b)(6) depositions of designees of American, retained an expert, briefed a motion for class certification, and conducted significant legal research. *Id*.; Dkt. 91-2, ¶¶ 11–13; 15–17. Thus, proposed Class Counsel gathered sufficient information to reasonably assess the risks of the litigation and the chances of successful recovery. Therefore, this factor weighs in support of final approval.

This case would have presented complex issues regarding certification, especially regarding a method of trying general damages on a class-wide basis – as there is little to no case law on this issue across the country but it could rapidly develop. Thus, a complex issue arose regarding the handling of class member damages if the Class Representatives and absent class members were required to appear at individual hearings for damages. This case would have presented complex issues regarding certification and contractual liability in light of the novel Covid-19 pandemic and related institutional closures – as it did on the motion to dismiss. Therefore, if contested and litigated through summary judgment and/or class certification, there would be a high likelihood that another appeal would be briefed and presented to the D.C. Circuit. Additional complex trial issues would have also likely been subject to motion practice

including Daubert motions on the parties' respective experts and reports.

### D.  Reaction of the Settlement Class.

Overall, the reaction of the class has been overwhelmingly positive, "which weighs in favor of approval." *Trombley*, 826 F.Supp.2d at 200; *see also* Dkt. 94-3 ¶ 18 ("This is an educated Settlement Class who has been actively involved in communications with Class Counsel throughout the Settlement processes… Thus far, the Class Members reactions have been overwhelmingly positive and excited for the prospects of meaningful payment as part of the Settlement…. In my personal interactions with numerous Class Members through the notice process, no Class Members have expressed any dissatisfaction with proposed Settlement or its terms."). There were no objections received and only one class member opted out. *See* Ex. 2, Declaration of Camerson R. Azari, Esq., ("Azari Dec.") on behalf of Epiq Class Action and Claims Solutions, Inc. ("Epiq"). *See In re Lorazepam*, 2003 WL 22037741, at *6 ("[T]he existence of even a relatively few objections certainly counsels in favor of approval.").

### E.  Opinions of Experienced Counsel.

"Opinion of experienced and informed [counsel] should be afforded substantial consideration." *In Re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 380 (citing *New York v. Reebok Int'l. Ltd.,* 903 F. Supp. 532 (S.D.N.Y. 1995)). As detailed in the Motion for Approval of Attorney's Fees, Costs, and Service Awards (Dkt. 94-1) and in preliminary approval (Dkt. 91-1), Class Counsel believes that this Settlement is the best result achievable in the circumstances of the case. Class Counsel have based their approval of Settlement on the risks of certification, trial, especially trial of damages, and appeal if necessary. Moreover, even if Plaintiffs were to win at trial and on appeal, the protracted litigation would result in considerable delay to Plaintiffs' recovery. A lower, guaranteed sum today over the possibility of getting a

larger amount (with risk of getting nothing) in the future is a rational balance, especially in today's troubled economic environment. This Settlement compares favorably to similar COVID-19 tuition and refund cases,[3] based on the experience of Class Counsel, who have been actively involved in several similar actions. *See* Dkt. 91-9 (listing involvement in several similar actions), Dkt. 91-10 at ¶¶ 44, 46, 53, 56, 68, and 69 (listing several similar actions across the country), and Dkt. 91-8 at 2-5 (charting similar cases in different jurisdictions across the country). The risk that the Court might not certify the class as to damages that would necessitate Settlement Class Members to come forward and prove damages in mini-trials is a significant factor in Class Counsel's opinion – or worse, pursue their claims individually and be required to establish their damages own their own (or incur their own costs of an economic expert to perform a hedonic, market, or conjoint analysis). *See e.g.*, *In re Pepperdine Univ. Tuition & Fees COVID-19 Refund Litig.*, 659 F. Supp. 3d at 1095 (referring to the conjoint analysis of the student's expert).

Therefore, this factor weighs in favor of final approval.

## F.  Procedural Fairness Is Satisfied

Courts also consider procedural fairness in evaluating a settlement, including (1) whether

---

[3] *See e.g., Ninivaggi et al. v. University of Delaware*, Case No. 1:20-cv-01478-SB ($6.3MM common fund); *Smith v. The University of Pennsylvania*, No. 2:20-cv-02086-TJS ($4.5MM common fund); *Wright v. S. New Hampshire Univ.*, No. 1:20-cv-00609-LM (D.N.H.) ($1.25MM common fund); *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.) ($2.4MM common fund); *Martin v. Lindenwood Univ.*, No. 4:20-cv-01128-RLW (E.D. Mo.) ($1.65MM common fund); *D'Amario v. The University of Tampa*, No. 7:20-cv-03744-CS (S.D.N.Y.) ($3.4MM common fund); and *Metzner v. Quinnipiac University*, 3:20-cv-00784-KAD (D. Conn.) ($2.5MM common fund);, *Fittipaldi v. Monmouth University*, Case No. 3:20-cv-05526-MAS-RLS (D.N.J.) ($1.3MM common fund); *In re Columbia University Tuition Refund Action*, Case No. 1:20-cv-03208-JMF (S.D.N.Y.); *Porter v. Emerson College*, Case No. 1:20-cv-11897-RWZ (D. Mass. Nov. 15, 2022) (granting final approval of the class settlement); *Booth v. Molloy College*, Index No. 608750/2020 (Sup. Ct. Nassau Cty. (NY), Oct. 18, 2023); *Staubus v. Univ. of Minnesota*, Court File No. 27-cv-20-8546 (4th Jud. Dist., Hennepin Cnty. (MN)); *Smith et al. v. The Univ. of Pennsylvania*, Case No. 2:20-cv-02086 (E.D. PA); *Espejo, et al. v. Cornell University*, Case No. 3:20-cv-00467-MAD-MIL (N.D.N.Y.); *Levin et al. v. Board of Regents for the Univ. of Colorado*, Case No. 2020CV31409 (D. Colo); *Wnorowski v. Univ. of New Haven*, No. 3:20-cv-01589 (D. Conn.).

the class representatives and class counsel have adequately represented the class, (2) whether the proposal was negotiated at arm's length, and (3) whether notice process was effectuated in a reasonable manner to class members who would be bound by the proposal. *See Nat'l Veterans Legal Servs. Program*, 2024 U.S. Dist. LEXIS 48961 at *20-22. All three factors of procedural fairness are satisfied here.

First, the Class Representatives have served as adequate class representatives throughout the entire course of this litigation, including through the appeal on the motion to dismiss, through discovery, and up through class certification. *See* Dkt. 94-6, ¶¶ 5-22 (Declaration of Plaintiff Rabinowitz affirming his involvement in this action from initiation through the settlement processes); Dkt. 94-5 (Declaration of Plaintiff Qureshi detailing his involvement in this action and his support of the settlement); Dkt. 94-7 (Declaration of Plaintiff Arif, same). As detailed in these declarations, Class Representatives have demonstrated their adequacy and commitment to this litigation by performing their duties as named Plaintiffs and by litigating this case through the D.C. Circuit Court of Appeals and through the briefing of class certification. *Id.* Class Representatives have been in contact with counsel;ass Cpimse; regarding the status of their case, reviewed documents filed on their behalf, and searched for and collected documents relevant to this Action. *Id.* Furthermore, Class Representatives sat for depositions and have been involved in the settlement processes to ensure that the proposed Settlement protects Settlement Class Members. *Id.* As declared by Plaintiff Rabinowitz, "I agreed with my counsel that the mediator's settlement recommendation that the Action be settled for the sum of $5,439,000 by the University, should be accepted by Plaintiffs as in the best interests of the Class and presented to this court for its review." Dkt. 94-6 at ¶ 19; *see also* Dkt. 94-7 at ¶ 19. Thus, the Class Representatives have been actively engaged in this litigation and done everything to support the

litigation – and most importantly, in the best interest of their fellow students and Settlement Class Members.

Similarly, as reflected in Class Counsel's Motion for Attorney's Fees (Dkt. 94-1), Class Counsel has adequately represented the interests of Settlement Class Members throughout this litigation, including its work before this Court during discovery and motion practice – as well as before the D.C. Circuit. In fact, the Settlement here compares favorably to other similar cases across the country. *See also* Dkt. 94-2, ¶¶ 25-31 (summarizing the terms of the agreement and the risk of litigating this matter).

As to the third factor of procedural fairness and in accordance with the Court's Preliminary Approval Order (Dkt. 93), Plaintiffs retained Epiq to administer the settlement process including by providing Notice of the proposed Settlement to the Settlement Class Members. That Notice process is detailed in the Azari Declaration (Ex. 2) who details his role at Epiq and the tasks they performed in the process of administrating the settlement agreement. *See* Ex. 2. As detailed in the Azari Dec., the "Notice Plan individual notice efforts reached approximately 99% of the identified Settlement Class" and was bolstered by the public Settlement Website. Ex. 2, Azari Dec. at ¶¶ 18, 20-30; id. at ¶ 29 ("As of April 15, 2024, an Email Notice and/or Postcard Notice was delivered to 7,339 of the 7,345 uniqe, identified Settlement Class Members."). The Notice Plan included 13,401 emails, 608 Postcard Notices, and 159 physical Long Form Notices (with Election Forms) were mailed. *Id.* at ¶¶ 22-28.

Importantly, the Notice process's procedural fairness is bolstered by the fact that Settlement Class Members were not required to submit claim forms or do anything to receive settlement payment – if this Court ultimately approves the Settlement. Settlement Class Members will receive a check at their last known address (including if it was updated) if they do

nothing. Further, the Notice contains sufficient notice provisions.

**G.    The Relief Provided To The Settlement Class Is Adequate Under The Rule 23(e)(2)(C) Factors**

In evaluating the adequacy of the relief to the Settlement Class, the court must take in

account:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).

### C.  The Costs, Risks, and Delay of Trial and Appeal

This case has been diligently litigated by both sides. Significant work has been done,

including but not limited to: written discovery, review of a significant volume of documents

produced, legal research and comparison of analogous cases, depositions, analysis of numerous

catalogs and materials, and participation in multiple mediation sessions with an experienced

mediator and magistrate judge. Had this case not settled, class certification and summary

judgment would have been fully briefed and ruled upon, and depending upon the results, further

discovery and litigation would have commenced before starting a jury trial. Furthermore, any

decision made by the Court adverse to a Party likely would have been appealed; thus,

significantly delaying reaching a final judgment in this case.

Here, at the time of Settlement, pending before the Court was Plaintiffs' Motion for Class

Certification. Even if the Parties fully briefed the Motion for Class Certification, there was no

guarantee that the Court would have granted such motion. *See, e.g., Evans v. Brigham Young

Univ.,* No. 1:20-CV-100-TS, 2022 WL 596862, at *4 (D. Utah Feb. 28, 2022) (denying

plaintiff's motion for class certification). However, at this stage in the litigation, the Parties were able to make an informed decision concerning the risks and costs involved. The risks and costs involved in continuing this litigation render settlement at this juncture the prudent course of action. *See Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 362 (D.D.C. 2007) ("It is obvious that Plaintiffs faced significant risks in establishing both liability[4] and damages and in continuing to trial, and that the fairness, adequacy, and reasonableness of the settlement must be viewed in light of these considerations."). Accordingly, this factor warrants the granting of preliminary approval.

### D. The Proposed Method of Distributing Funds to the Settlement Class is Effective, Fair, and Adequate

Rule 23(e)(2)(C) next requires a consideration of the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). "As with settlement agreements, courts consider whether distribution plans are fair, reasonable, and adequate." *In re Lorazepam*, 2003 WL 22037741, at *7. "A plan of distribution is thus sufficient where, as here, there is 'a rough correlation' between the settlement distribution and the relative amounts of damages recoverable by Class Members." *Id.* (citing *In re Chicken Antitrust Litig.,* 669 F.2d 228, 240 (5th Cir.1982)).

Here, the Settlement divides the Settlement Fund equally among all students who qualify for payment, excluding students who did not have to pay anything out of pocket or through loans

---

[4] Indeed, a number of courts across the country have granted motions for summary judgment in favor of the university defendants. *See Bergeron v. Rochester Inst. Of Tech.*, 2023 U.S. Dist. LEXIS 18547 (W.D.N.Y. Feb. 3, 2023) (granting summary judgment on all claims); *Randall v. Univ. of the Pacific*, 2022 WL 1720085 (N.D. Cal. May 28, 2022); *Choi v. Brown Univ.*, 2022 WL 843762 (D.R.I. Mar. 22, 2022); *Berlanga et al v. Univ. of San Fran.*, Case No. CGC-20-584829 (Ca. Super. Ct. San Fran. Cnty.) (July 19, 2022 Order, granting summary judgment for defendant on all counts except California's UCL); *Zwiker v. Lake Superior State Univ.*, 2022 WL 414183 (Mich. Ct. App. Feb. 10, 2022) (affirming trial court grant of motions for summary disposition in three consolidated matters).

for tuition and/or fees for the Spring 2020 Semester. By excluding students who did not have to pay anything out of pocket for the Spring 2020 Semester, the allocation plan considers "the relative strength and values of different categories of claims." *See In re Telik, Inc. Secs. Litig.*, 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008). While some of the similar settlements involving other colleges and universities provided for pro rata allocation of settlement proceeds to students based on amounts they paid out of pocket for their education, the Parties considered that approach here, however it was not feasible due to American's lack of electronic data in the form that would be necessary to distribute settlement proceeds in such a manner. Accordingly, the Settlement divides the proceeds equally among all class members who qualify for payment. This distribution method was approved by the court in a similar class action settlement related to COVID-19 tuition and fee refunds at Quinnipiac University. *See Metzner v. Quinnipiac Univ.,* No. 3:20-cv-00784-KAD (final approval of class action settlement granted where a common fund settlement of $2.5MM was distributed equally among qualifying class members).

Importantly, Settlement Class Members will not need to make a claim to receive an award, rather, each Settlement Class Member will *automatically* receive an award, unless they opted-out. As stated in the Settlement Agreement, the proposed Notice informed Settlement Class Members of the Settlement's substantive terms. It advised Settlement Class Members of their options for remaining part of the Settlement Class or for opting out of the Settlement; for receiving their Cash Award; for objecting to the Settlement, Class Counsel's attorneys' fee application and/or request for service awards to the named Plaintiffs; and how to obtain additional information about the Settlement. The proposed plan for notice to Settlement Class Members was designed to directly reach a high percentage of Settlement Class Members, since Settlement Class Members' contact information is readily available and maintained by

28

American. Furthermore, a professional Settlement Administrator with experience in handling class action settlements increased the overall effectiveness of distribution.

Therefore, the proposed method of distribution is effective, fair, and adequate and this factor weighs in favor of preliminary approval.

### E.  Attorneys' Fees and Expenses are Reasonable

Pursuant to the Settlement Agreement and as detailed in Dkt. 94, Class Counsel has applied to the Court for a Fee Award not to exceed one-third of the Settlement Fund and reimbursement of costs and expenses in an amount not to exceed two hundred thousand dollars. In the D.C. Circuit "a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases." *Sweedish Hosp. Corp. v. Shalala*, 1 F.3d. 1261, 1271 (D.C. Cir. 1993). "While fee awards in common fund cases may range from fifteen to forty-five percent, the normal range of fee recovery in antitrust suits is twenty to thirty percent of the common fund." *In re Lorazepam*, 2003 WL 22037741, at *7 (internal citations omitted). This same percentage of Attorneys' fees from the Settlement fund has been approved in analogous COVID-19 College and University Tuition and Fee Refund litigation. *See, e.g., Wright v. S. New Hampshire Univ.,* No. 1:20-cv-00609-LM, Order (D.N.H. Aug. 22, 2021); *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM, Order (S.D. Fla. Aug. 7, 2021), *Martin v. Lindenwood Univ.*, No. 4:20-cv-01128-RLW, Order (E.D. Mo. May 11, 2022). Therefore, Attorneys' Fees and Expenses are reasonable, and this factor weighs in favor of preliminary approval.

### F.  The Parties Have No Additional Agreements to be Disclosed Under Rule 23(e)(3)

There are no side agreements to identify under this factor.

### III.    The Settlement Treats Settlement Class Members Equally.

Rule 23(e)(2)(D) requires the Court to evaluate whether class members are treated equitably. As reflected in the plan of allocation, and as discussed above, the proposed Settlement treats Settlement Class Members equitably relative to each other as they all will receive the same amount of the Net Settlement Fund. Furthermore, Settlement Class Members will provide American with the same release in return for receiving the benefits provided under the Settlement. Therefore, this factor weighs in favor of preliminary approval.

## IV.    The Class Administration Costs Should Be Paid

The Settlement Agreement provided that the Settlement Administrator is entitled to expenses associated with the administration process. *See* Dkt. 91-3 at 1.31. Epiq, the Settlement Administrator, has provided a sworn declaration that it seeks $57,283 for expenses incurred as the work performed and expected to be performed to complete the settlement processes outlined in the agreement. *See* Ex. 2, Azari Dec., at ¶ 35. In Class Counsel's experience, this amount was reasonable and part of a bidding process to ensure that competitive prices were achieved.

## V.    Attorneys' Fees And Incentive Awards

### A.    Plaintiffs' Request for Attorney's Fees is Reasonable

As detailed in Docket 94 and Plaintiffs' motion, Plaintiffs' requests for attorney's fees, costs, and expenses is reasonable – and aligns with similar actions of the type and case law in this District. In the D.C. Circuit, the "percentage of the fund" method of calculating attorneys' fees is the "proper measure" of "contingent counsel fees in class actions resulting in the creation of a common fund payable to plaintiffs." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1263 (D.C. Cir. 1993).

### B.    Plaintiffs' Request for Service Awards is Reasonable

As detailed in Dkt. 94, Plaintiffs' request for service awards is reasonable – and aligns

with similar actions of the type and case law in this District. It is common for courts to approve incentive awards in class-action litigations, especially when there is a common fund created to benefit the entire class. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002). In fact, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-0790, 2003 WL 22037741, at *10 (D.D.C. June 16, 2003).

The Settlement provides for an award for the Class Representatives in the amount of $7,500 each from the Settlement Fund. Such awards are common in class action litigation and the amount is in line with amounts paid in other cases in this District. *See e.g., Razmyar v. Bombay Club, Inc.*, 2016 U.S. Dist. LEXIS 106465, at *7-8 (D.D.C. June 13, 2016). Each Class Representative has diligently fulfilled their duties and responsibilities as a Class Representative during every phase of the litigation. *See* Dkt. 94-5; Dkt. 94-6; Dkt. 94-7.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submits that this Court enter the proposed and agreed-upon Final Approval Order (respectfully submitted as Exhibit 1) – after the conclusion of the Fairness Hearing on May 7, 2024.

Dated: April 16, 2024                          Respectfully Submitted,

                                               **POULIN | WILLEY | ANASTOPOULO, LLC**

                                               */s/ Paul Doolittle*
                                               Paul J. Doolittle
                                               32 Ann Street
                                               Charleston, SC 29403
                                               Tel: (803) 222-2222
                                               Paul.doolittle@poulinwilley.com

**BURSOR & FISHER, P.A.**
*/s/ Sarah N. Westcot*
Sarah N. Westcot
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com


**LEEDS BROWN LAW, P.C.**
*/S/ Michael Tompkins*
Michael Tompkins
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
Email: Mtompkins@leedsbrownlaw.com


*Attorneys for Plaintiffs*